**RECEIVED**

FEB 1 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**In The**
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Washington, D.C.**

**JANICE SCOTT-BLANTON,** *pro se,*

**Plaintiff,**

v.

**CIVIL ACTION NO. 1:07cv00098**

**UNIVERSAL STUDIOS, INC., et al.,**

**Defendants.**

<u>MOTION FOR PRELIMINARY INJUNCTION</u>

Plaintiff Janice Scott-Blanton, proceeding *pro se,* moves this Honorable Court for entry of an Order enjoining all of the defendants, immediately, from distributing, showing, marketing, or otherwise generating any revenues or profiting or selling in anyway whatsoever in connection with the motion picture *"Brokeback Mountain"* and its related screenplay and short story, or any derivatives works of same in any medium or outlet, either domestically or internationally, until this Court renders judgment on plaintiff's copy infringement claim.

For the foregoing reasons and those stated in the accompanying Memorandum, plaintiff respectfully requests that this Honorable Court grants her a preliminary injunction.

Respectfully submitted,

Janice Scott-Blanton
Plaintiff, *pro se*

Janice Scott-Blanton
3578 Wharf Lane
Triangle, Virginia 22172
(703) 861-0028

## CERTIFICATE OF SERVICE

I hereby certify that I either hand-delivered or mailed certified-postage-prepaid, first class U. S. Mail the foregoing to the following defendants and or their representative on this the _____ /3____ day of February 2007:

**UNIVERSAL STUDIOS, INC.,**
**UNIVERSAL CITY STUDIOS PRODUCTIONS, LLLP,**
**UNIVERSAL STUDIOS LICENSING, LLLP,**
**FOCUS FEATURES, LLC,**
**RIVER ROAD ENTERTAINMENT, INC.,**
**DEL MAR PRODUCTIONS, LLC,**
**SIMON & SCHUSTER, INC.,**
**LARRY MCMURTRY,**
**DIANA OSSANA,**
**ANG LEE**
**c/o Steven J. Metalitz, Esquire**                          **HAND-DELIVERED**
**Mitchell, Silberberg & Knupp, LLP,**
**Counsel for Defendants**
**2300 M. Street, N.W., Suite 800**
**Washington, D.C. 20037**

**Advance Publications, Inc.**                               **U. S. MAIL**
**Publisher Of The New Yorker Magazine**
c/o Sabin, Bermant & Gould, LLP, Registered Agent
Four Times Square
New York, NY 10036

**Del Mar Productions, Inc.**                               **U. S. MAIL**
73 Glenville Drive
Rochester, NY 14606

**Annie Proulx**                                            **U. S. MAIL**
c/o Dray, Thomson & Dyekman, P.C.
204 E. 22nd Street
Cheyenne, WY 82001

2

**Chuck Shelton**
c/o VNU Literary Group
770 Broadway
New York, New York 10003

<u>**U. S. MAIL**</u>

Janice Scott-Blanton, *pro se*

**In The**
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Washington, D.C.**

**JANICE SCOTT-BLANTON,** *pro se,*

**Plaintiff,**

v.                                                    **CIVIL ACTION NO. 1:07cv00098**

**UNIVERSAL STUDIOS, INC., et al.,**

**Defendants.**

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Janice Scott-Blanton, proceeding *pro se,* submits this Memorandum in support of her Motion for Preliminary Injunction. Plaintiff relies on her Declaration and its exhibits submitted herewith, as well as Exhibits A through R from her complaint.

**INTRODUCTION**

Plaintiff is the author and copyrighter of the novel *"My Husband is on the Down Low and I Know About It"* (hereinafter "novel") that was published on March 15, 2005. The defendants collectively participated in the making and distribution of the motion picture *"Brokeback Mountain"* (hereinafter "motion picture"), and its screenplay and short story to the public. The motion picture was released in December 2005, approximately nine months after plaintiff's novel was released into the public domain through various distribution channels, including its availability for ordering at major bookstore chains such as Amazon.com, Borders Group and Barnes & Noble as well as on their and other online Internet based booksellers' websites beginning in March 2005.

The motion picture was purportedly based on a short story written by defendant Annie Proulx that was published in the October 13, 1997 issue of the *New Yorker Magazine.* After its December 2005 release, the motion picture received numerous Academy Award nominations and subsequent Academy Awards. Upon information and belief based on widely publicized press reports, the motion picture has already generated well in excess of $200 Million in revenues since its release.

Plaintiff is entitled to well-deserved public recognition that the motion picture was based on her novel and artistic creations. Although plaintiff can proceed in this Court for money damages, the motion picture, screenplay and book continue to be shown in the public domain and sold to the public without the plaintiff being accorded her due credit and recognition for her work. Further, plaintiff endures permanent, repeated and ongoing uncompensated and irreparable harm so long as the motion picture and any derivatives of it in any medium or outlet continues to be shown, distributed and or sold. This is precisely the type of irreparable injury that courts have routinely and preliminarily enjoined in cases brought under copyright infringement laws.

## ARGUMENT AND DISCUSSION

## I.    STANDARD OF REVIEW

In order to obtain injunctive relief, plaintiff must demonstrate 1) that she is likely to prevail on the merits of her copy infringement claim, 2) that she will suffer irreparable harm if the injunctive relief is denied, 3) that the granting of injunctive relief will not cause substantial harm or injury to other parties, and 4) that there lies a public interest. *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 182 U.S. App.D.C. 220, 222, 559 F.2d 841, 843 (1977). "The necessary 'level' or 'degree' of

possibility of success will vary according to the court's assessment of the other factors."
*Id.*

Preliminary injunctions are a common judicial response to the imminent or actual infringement of an apparently valid copyright. *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1187 (5th Cir. 1979). Plaintiff need only demonstrate "either a reasonable likelihood of success on the merits and irreparable injury or that serious questions going to the merits were raised and the balance of hardships tips in plaintiff's favor." *Cadence Design Systems, Inc. v. Avant! Corp.*, 125 F.3d 824 (9th Cir. 1997)

"The standard for deciding a motion for a preliminary injunction is patently different . . . from the standard applied in deciding a motion for summary judgment . . . Preliminary injunction decisions rule on only the probability of success of the merits rather than the merits themselves." *Brokers' Assistant, Inc. v. Williams Real Estate Co., Inc.*, 646 F.Supp. 1110 (S.D.N.Y. 1986) (citation omitted). In making the preliminary injunction decision in the instant case, this Court should take into consideration that plaintiff is entitled to a presumption of irreparable harm upon a showing of a reasonable probability of success on the merits. *Cadence, supra.*, 125 F.3d 824. Moreover, "[i]rreparable harm is presumed because the copyright owner's right to exploit [her] own work is unique." *Metro-Goldwyn-Mayer, Inc. v. American Honda Motor Co., Inc.*, 900 F.Supp. 1287, 1301 (C.D.Cal. 1995).[1]

---

[1]    Plaintiff owns the exclusive rights (1) to reproduce the copyrighted work; (2) to prepare derivative works based on the copyrighted work; (3) to distribute copies . . . of the copyrighted work to the public; (4) to perform the copyrighted work publicly; and (5) to display the copyrighted work publicly. *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1397 (9th Cir. 1997). Notably, "[t]he financial incentives to authors consist of exclusive rights to their writings, that may be sold or licensed for money, so that authors may earn a living from the creations that benefited the public." *CCC Information Serv. v. Maclean Hunter Mkt. Rep.*, 44 F.3d 61, 69 (2nd Cir. 1994).

The availability of money damages "is not a reason to deny injunctive relief." *Cadence, supra.*, 125 F.3d 824; *See also Practice Management Information Corp. v. American Medical Ass'n,* 877 F.Supp. 1394, 1396 (C.D.Cal. 1994). Furthermore, because plaintiff has demonstrated compelling and "striking similarity"[2] between her novel and the motion picture from which could be reasonably inferred that the defendants intentionally and knowingly pirated the plaintiff's novel, they would be without basis to even suggest that harm would befall them if this Court were to enjoin their infringement. *Triad Sys. Corp. v. Southeastern Express Co.,* 64 F.3d 1330, 1338 (9th Cir. 1995). This is especially true in light of the substantial benefits the defendants have enjoyed thus far, including the generation of more than $200 Million in revenues and numerous high profile awards, as a windfall and fruits of their piracy of the plaintiff's novel.

## II.     THE DEFENDANTS HAVE PIRATED THE PLAINTIFF'S NOVEL

The defendants have blatantly and reckless pirated the plaintiff's novel, including the characters, timeline and expressions. The motion picture, its screenplay and short story are so substantially similar to and derivative versions of the plaintiff's novel that the only reasonable explanation for the numerous striking similarities would be that of piracy and copyright infringement.

## A.     Merits Of Copyright Infringement Claim

There are two elements required to establish a claim for copyright infringement: 1) ownership of a valid copyright, and 2) copying of protected elements of the copyrighted work. *Feist Publications v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 1295-96, 113 L.Ed.2d 358 (1991).

---

[2]     The phrase "striking similarity" has been found by courts to state, "plaintiffs must demonstrate that 'such similarities are of a kind that can only be explained by copying, rather than by coincidence, independent creation, or prior common source.'" *Testa v. Janssen,* 492 F.Supp. 198, 203 (W.D.Pa. 1980) (quoting *Stratchborneo v. Arc Music Corp.,* 357 F.Supp. 1393, 1403 (S.D.N.Y. 1973)).

4

### i. Plaintiff Owns A Valid Copyright For Her Novel

Plaintiff has attached as Exhibit A to her Declaration a copy of her certificate of copyright ownership for her novel. Ownership of her intellectual property associated with her novel simply cannot be disputed.

### ii. Copying Of Plaintiff's Works Protected By Copyright Laws

This Court has recognized that a plaintiff can rarely provide direct evidence of copying and that demonstrating that the infringer had access to the protected work and that the works are substantially similar can raise the inference of copying. *See McCall v. Johnson Publishing Co.,* 680 F.Supp. 46, 48 (D.D.C. 1988). Plaintiff concedes that she does not have direct evidence of copying at this stage in the litigation. Nevertheless, plaintiff affirmatively believes that her novel and the motion picture are so substantially similar that the only reasonable explanation for the similarities would be that of piracy by the defendants.

**1.    The defendants had access to plaintiff's novel**

Plaintiff's novel was released for public consumption on March 15, 2005. *Pl. Declaration.* Plaintiff has determined that defendant Defendant Larry McMurtry ("McMurtry") owned three bookstores, one of which was located in the Washington, D.C. area. *Id.* Defendant McMurtry was also accredited as one of the two screeenwriters for the motion picture, the other accredited screenwriter being defendant Diana Ossana. *See Exhibit G* attached to plaintiff's complaint. It is a reasonable inference that defendant McMurtry, as a bookstore owner, would be aware of new books and novels being released for publication. Further, it is also a reasonable inference that because defendant McMurtry was a bookstore owner and a screenwriter accredited with the motion picture that he could have accessed plaintiff's novel and used it in connection with writing the

5

scripts for the motion picture. This is particularly true in light of the compelling and profound similarities between the plaintiff's novel and the motion picture as will be fleshed out in detail below.

Plaintiff's novel was released to the public forum nine months prior to release of the motion picture. The novel was widely available and could be ordered through numerous major bookstore chains and their websites beginning on March 15, 2005. *Pl. Declaration.* It is a reasonable inference that on March 15, 2005 the defendants had access to the plaintiff's novel since it was publicly available long before the release of the motion picture.

    **2.**    **There is substantial similarity between the plaintiff's novel and the motion picture so as to reasonably infer that the defendants copied the plaintiff's expression from her novel resulting in the motion picture displaying the stamp of plaintiff's novel**

Plaintiff submits by her declaration filed in support of her motion for preliminary injunction that she has reviewed the motion picture dozens of times to aid her in discerning the substantial similarities between her novel and the motion picture. *Id.* Some of the more profound and substantial similarities were the characters, timeline and time differences for similar events from each the novel and motion picture, including that the relationships from each the novel and motion picture lasted twenty (20) years as depicted in the following "Chart 2." Notably, the defendants not only pirated plaintiff's expression from the novel, but the defendants were brazing enough to use the exact same time differences (4 years, 4 years and 2 years, see Chart 2 below) for and between which time certain key scenes took place, which were entirely consistent with the novel. Moreover, in order to pirate plaintiff's expression, the defendants further depicted scenes and characters in the motion picture that mirror similar scenes and characters found in the

6

novel. *Pl. Declaration.* "To justify the inference that copying is the source of an allegedly infringing work, both the idea and expression of the work must be substantially similar to the protected work." *McCall, supra,* 680 F.Supp. at 48. Further, "[t]he requirement of substantial similarity of idea and expression does not alter the scope of copyright protection which extends only to expression. *Id.,* n. 2.

Plaintiff directs the Court to her declaration filed in support of the preliminary injunction where she specifically identified numerous undeniable similarities between her novel and the motion picture. For example, there were two particular expressions in the novel that had a cause and effect where one could not have occurred without the other. **In the novel,** the wife Annette witnessed her husband James perform oral sex on a man the night of their anniversary, unbeknownst to James. At the time this occurs, Annette does not say anything to James. **In the motion picture,** the wife Alma witnessed her husband Ennis passionately kissing a man, unbeknownst to Ennis. At the time this occurs, Alma does not say anything to Ennis.[3] **In the novel,** Annette confronts James on his homosexual activity the morning after their 9th Anniversary, in the kitchen. James told her that he had purposely written a letter to her in his journal because he knew she was reading the journal and he did not know any other way to tell her. **In the motion picture,** Alma confronts Ennis on his homosexual activity the evening after Thanksgiving dinner, in the kitchen. Alma told Ennis that she had purposely written a note and put it on the end of his fishing line for him to find it because she knew he was

---

[3]    Plaintiff submits that the oral sex scene from her novel and the kissing scene from the motion picture are, subliminally, a distinction without a difference as they both served the same purpose of portraying the husband engaging in homosexual activity that the wife observed secretly. Including a male homosexual oral sex scene in the motion picture would have been too socially provocative and graphic in light of current public attitudes and sentiment. The kissing scene, though it conveyed the same expression, was less provocative and socially graphic, and was by the defendants a "crude effort to give the appearance of dissimilarity." *Meier Co. v. Albany Novelty Manufacturing Co.,* 236 F.2d 144, 146 (2nd Cir. 1956).

not going to the mountains to fish.[4]  **In the motion picture,** Alma's husband Ennis was going on fishing trips to meet Jack.  Each time Ennis went on one of his fishing trips in the motion picture, this was synonymous with Annette reading James' journal in the novel.  Each time Ennis went on one of these trips Alma became more withdrawn and developed addictive behaviors.  Her smoking increased and she had obviously gained weight.  Also, Alma had the mail and saw that Ennis had received a postcard from Jack saying he would be in town in 2 weeks, unbeknownst to Alma.  Alma read the postcard and then hid it under a stack of sale papers.  **In the novel,** James and Annette each maintained a journal.  Annette found James' journal and would hide to read it each opportunity she got.  One day Annette hid James' journal under a stack of towels.  It became evident to Annette that James was having an affair.  Each time Annette read James' journal, she became more withdrawn and developed addictive behaviors.  Annette's alcohol drinking increased and she had gained weight.  Annette became a hostage within herself.  Annette had taken a message from Thomas for James about him staying in Los Angeles for the holidays, but unbeknownst to Annette, Thomas had come to town.[5]

The foregoing examples are only a few, amongst dozens of examples identified by the plaintiff in her declaration, of the compelling and striking similarities between her novel and the motion picture.  It is clear that numerous scenes from the motion picture represent plaintiff's expression visa vie the deployment of events and the similar

---

[4]       Notably, in both the novel and motion picture, the wife confronts the husband about his homosexual act she personally witnessed and did so in the "kitchen."  Further, both scenes employed the use of writing, i.e., a letter in the novel and a note in the motion picture, for the purpose of the spouse being made aware of the homosexual tendencies.

[5]       Yet another substantial similarity was that both James and Annette kept a journal.  Ennis' fishing trips were synonymous with James' journal and were his mental journal.  And, of course, in both instances, the wife secretly read the husband's journal.

emotional reactions of Annette with her husband James from the novel compared to Alma with her husband Ennis from the motion picture. Further, there were similar emotional reactions of James with his wife Annette from the novel compared to Ennis with his wife Alma from the motion picture, each of whom was having a homosexual relationship with another man while secretly hiding the relationship from the wife. There can be no other explanation for the striking similarities except piracy by the defendants of the plaintiff's copyrighted work. *See* *Scott v. Paramount Pictures Corp.,* 449 F.Supp. 518, 520 (D.D.C. 1978).

### a.     Concept and Feel

"In determining substantial similarity, courts must consider both the works as a whole and their individual parts." *Nelson v. Grisham,* 942 F.Supp. 649, 653 (D.D.C. 1996). Furthermore, "just as similarity cannot be rejected by isolating as an idea each characteristic the characters have in common, it cannot be found when the total perception of all the ideas as expressed in each character is fundamentally different." *Nelson,* 942 F.Supp at 653-54. The concept and feel of the novel and the motion picture are extraordinarily similar. Plaintiff's novel is a non-fictional story about a woman witnessing her husband engaged in homosexual activity and the emotional effect it had on her, and a doomed homosexual affair between two bisexual men, each married with a wife and children, who also experienced emotional and psychological turmoil because society generally rejected homosexual relationships, which would not allow the two men, married to women with children, to express their homosexuality publicly. Similarly, the motion picture was about a married couple that experienced emotional and psychological turmoil because of the husband's homosexual relationship with another man.

9

Plaintiff in her declaration has identified striking similarities between expressions of scenes and events from her novel as compared with the motion picture in "Chart 1" below. Plaintiff submits that if this Court considers the novel and motion picture as a whole and their individual parts, it will become apparent that plaintiff has met the threshold required to demonstrate sufficient similarity between her novel and the motion picture for purposes of granting her preliminary injunction.

## Chart 1--Individual Similarities

| Plaintiff's Novel | Motion Picture |
|---|---|
| Both James' parents are dead. His father was killed in a truck accident; his mother had diabetes, suffered a stroke and died from complications. | Both Ennis' parents are dead. They were killed in a car accident. |
| James and his siblings were raised by their aunt. | Ennis was raised by his other siblings. |
| James had traumatic childhood experiences. At the age of about 8 years old, he was forced to watch an old man masturbate to completion. | Ennis had a traumatic childhood experience. At the age of about 9 years old, he was forced by his father to look at the corpse of a man who'd been dragged by his penis. |
| When James was 15, he walked down a dark alley with a male childhood friend and had sex. These experiences helped shape his personality. | Jack walked down a dark alley with a male prostitute. |
| Annette worked as a department store clerk. | Alma worked as a grocery store clerk. |
| James worked doing road construction. | Ennis worked doing road construction. |
| James chipped his front tooth and later had it fixed. | Jack had buckteeth but had them fixed. |
| James spent Thanksgiving with Annette's family. | Ennis spent Thanksgiving with Alma's new family. |
| James joined the army. | Jack said the army didn't get him. |
| James had plans to marry Annette after he received his first permanent duty assignment. | Ennis had plans to marry Alma after he came off the mountains. |
| Annette gets pregnant. | Alma gets pregnant. |
| They called their unborn child *Junior*. | Ennis called his daughter *Junior*. |
| Annette gives birth to a baby girl and her | Lureen gives birth to a baby boy. Her |

10

| | |
|---|---|
| mother and father are in the hospital room. James couldn't be there. | mother and father were in the hospital room. Jack was there, but as an outsider. |
| James marries Annette. | Ennis marries Alma. |
| Annette's father dies. | Lureen's father dies. |
| James meets Thomas; they worked in the same building, both in the army. | Ennis meets Jack; they work together herding sheep. |
| James and Thomas are bisexual. Thomas is more gay than bisexual. | They're both bisexual. Jack is more gay than bisexual. |
| After a night of drinking, they have their first homosexual encounter. They masturbate together.<br>James and Thomas develop a long-term secret homosexual relationship. | After a night of drinking, they have their first homosexual encounter. They have anal sex.<br>Ennis and Jack develop a long-term secret homosexual relationship. |
| Thomas had a friend named *Jenny*. | Ennis & Alma have a second daughter name Francine, but was changed to *Jenny*. |
| James experiences emotional turmoil, anger, guilt and resentment. | Ennis experience emotional turmoil, anger, guilt and resentment. |
| James began drinking beer to excess. | Ennis began drinking beer to excess. |
| James & Thomas' visits were infrequent. | Ennis & Jack's visits were infrequent. |
| Thomas always visited James. | Jack always visited Ennis. |
| Annette's in the kitchen cooking, James walks up behind her. | Alma's in the kitchen washing clothes in the sink and cooking, Ennis walks up behind her. |
| Thomas and one of his friends wanted to start their own business. | Jack wanted him and Ennis to start their own business, a calf operation. |
| James, Annette, Thomas and Jenny rode together and went to a prominent Swing Club. | Jack, Lureen, Randall and Lashawn rode together to a prominent Dance Hall where everyone were *swing dancing*. |
| James & Annette role-play. James hides in the closet and watch Annette have sex with Phillip. | Aguirre hides in the woods and watch through his binoculars, Jack and Ennis playing after having sex. |
| Phillip confronts Annette and eludes that he knew James was watching from the closet. | Aguirre confronts Jack and eludes that he knew about he and Ennis. |
| James and Annette have anal sex. He wants it all the time. She hates it but tolerates it. | Ennis and Alma have anal sex. He wants it all the time. She hates it but tolerates it. |
| Thomas called and left a message with Annette that he was coming to town. Unbeknownst to her, Thomas had come to town. | Unbeknownst to Alma, Jack was coming to town. He sends a postcard saying that he is coming to town in two weeks. |
| Annette suggests spending New Year's Eve at church. | Alma suggests going to the church social. |
| James searches the internet for someone to have sex with. | Jack searches the streets of Mexico for someone to have sex with. |
| Annette reads James' journal. | Alma reads Ennis' postcard. |

| | |
|---|---|
| Annette suspects that James is having an affair. | Alma suspects that Ennis is having an affair. |
| Annette becomes angry, emotionally distraught and withdrawn each time she reads James' journal. | Alma becomes angry, emotionally distraught and withdrawn each time Ennis went on his fishing trip. |
| Annette hugs her daughter tight and cries. | Alma hugs her daughter tight and cries. |
| Annette neglects her daughter and James. Annette began to work overtime. | Alma neglects her daughters and Ennis. Alma began to work overtime. |
| Annette makes up excuses not to have sex with James. | Alma makes up excuses not to have sex with Ennis. |
| Annette sees James performing oral sex on a man. She doesn't say anything. | Alma sees Ennis and Jack kissing passionately. She doesn't say anything. |
| Annette confronts James in the kitchen. | Alma confronts Ennis in the kitchen. |
| Annette and James separate. | Alma divorces Ennis. |
| James leaves without telling his daughter 'good-bye'. | Ennis leaves without telling his daughters 'good-bye'. |
| Annette's mother eludes that she knows about James, just before she dies. | Jack's mother eludes that she knew about Jack and Ennis. |
| James sometimes drank 6 beers in one night. He didn't gain any weight. | Ennis drank several beers and didn't gain any weight. Jack was a little thicker around the haunch. |
| Cora, Annette's sister, called to tell her that her mother was in the hospital. She was terminal. | Aguirre rode out to tell Jack his uncle Harold was in the hospital with pneumonia. Aguirre told Jack his mother sent the message. |
| James writes a letter to Annette in his journal for her to find. | Alma attaches a note to Ennis's fishing line for him to find. |
| | |

b.    **Plot, Setting, and Time Line**

It should be observed that the setting for certain events and occurrences in the novel changed as the story unfolded. In the motion picture, not only did the setting for similar events and occurrences change, but the defendants were so reckless so as to essentially duplicate, in many respects from the novel, the specific type of settings used for certain occurrences. For example, amongst many, **in the novel,** James spent a Thanksgiving holiday with Annette's family. **In the motion picture,** Ennis spent a Thanksgiving holiday with Alma's family. **In the novel,** there was a scene

12

where Annette was in the kitchen cooking when James walked up behind her. **In the motion picture,** there was a scene where Alma was in the kitchen cooking and washing clothes when Ennis walked up behind her. In Chart 1 above, plaintiff has identified numerous other expressions and settings from her novel that were either duplicated and or settings and expressions the defendants created in a "crude effort to give the appearance of dissimilarity." *Meier Co. supra,* 236 F.2d at 146. These dissimilarities are suspicious in light of the numerous and striking similarities already identified by plaintiff. *Id.*

The plot in plaintiff's novel takes the reader through a twenty-year relationship between James, Thomas and Annette. Similarly, the motion picture takes the viewer through a twenty-year relationship between Ennis, Jack and Alma. Moreover, the timeline as depicted in Chart 2 below between the novel and the motion picture is so substantially similar that no reasonable person could conclude that the defendants development of the twenty-year timeline and similarity of the events and expressions that occurred during that period were not piracy of the plaintiff's same twenty-year timeline of similar events and expressions.

13

## Chart 2--Similarities of the Timeline of their 20 Year Relationship

| PLAINTIFF'S NOVEL | | | | | MOTION PICTURE |
|---|---|---|---|---|---|
| | | | | | |
| James & Annette fell in love | 1984 | | | 1963 | Ennis & Jack fell in love |
| | | 4 yrs later | | | |
| James & Annette have their 1st swing experience in a hotel | 1988 | | | 1967 | Ennis & Jack have their 1st homosexual experience in a hotel |
| | | | | | |
| Kynosha is born | 1987 | | | 1963 | Ennis & Alma marry |
| | | | | | |
| Annette & James marry | 1988 | | | 1964 | Alma Jr. is born |
| | | | | | |
| Annette becomes suspicious of James' bisexual tendencies 8 years after marrying him | 1988 - 1996 | | | 1967 - 1975 | Alma stays married to Ennis for 8 years after becoming suspicious of his bisexual tendencies |
| | | | | | |
| James meet Thomas | 1993 | | | 1963 | Ennis meet Jack |
| | | 4 yrs later | | | |
| Thomas visit James | 1997 | | | 1967 | Jack visit Ennis |
| | | | | | |
| Annette & James separate after she confronts him on his homosexual affair | 1998 | | | 1975 | Alma divorce Ennis after the embrace she had glimpsed… |
| | | 2 yrs later | | | |
| Annette & James meet for dinner and decide to reunite | 2000 | | | 1977 | Alma & Ennis reunite for Thanksgiving dinner and she confronts him on his homosexual affair |
| | | | | | |
| Annette & James were married for 12 years before reuniting | 1988 - 2000 | | | 1963 - 1975 | Alma & Ennis were married for 12 years before divorcing |

14

c.    **Characters**

Perhaps the most compelling of striking similarities between the plaintiff's novel and the motion picture is the characters. **In the novel,** there was a relationship and then a marriage between James and Annette. **In the motion picture,** there was a relationship and a marriage between Ennis and Alma. **In the novel,** James had a homosexual affair with another man. **In the motion picture,** Ennis had a homosexual affair with another man. **In the novel,** Annette became emotionally distraught after finding out and confronting James about his homosexual affair. **In the motion picture,** Alma became emotionally distraught after finding out and confronting Ennis about his homosexual affair.[6] **In the novel,** Annette got pregnant. **In the motion picture,** Alma got pregnant. **In the novel,** James and Annette called their unborn child "Junior." **In the motion picture,** Ennis called his daughter "Junior." **In the novel,** Annette worked as a department store clerk. **In the motion picture,** Alma worked as a grocery store clerk. **In the novel,** James worked doing road construction. **In the motion picture,** Ennis worked doing road construction.

There are numerous other character similarities between the novel and the motion picture. Plaintiff's declaration discusses these and other character similarities. The concept and feel, plot, setting and timeline, as well as the characters of both the novel and the motion picture are too substantially similar to be considered a coincidence. "[S]uch simlarities are of a kind that can only be explained by copying, rather than by coincidence, independent creation, or prior common source." _Stratchborneo v. Arc Music Corp.,_ 357 F.Supp. 1393, 1403 (S.D.N.Y. 1973).

---

[6]    It is important to note that in both the motion picture and novel, the wife's reaction to her husband's homosexual relationship were nearly identical in that both wives developed addictive behaviors and both were withdrawn. Alma's smoking increased and she gained weight, Annette's drinking increased and she gained weight.

**B.    Irreparable Harm To Plaintiff**

The harm inflicted on the plaintiff is permanent, ongoing and irreparable.  It is without dispute that the motion picture, screenplay and book were extremely successful for the defendants by every measure.  It is without dispute that the motion picture, screenplay and book, as well as derivatives of them, have and continue to be sold, distributed in interstate and international commerce.  For these reasons and other reasons, the plaintiff has been and is being so egregiously deprived of recognition for her copyrighted work, and the ongoing distribution and showing of the motion picture and its derivatives continue to diminish any hope or possibility for the plaintiff to rightfully benefit from any sale or license of her copyrighted works for use in a movie or television show or any other type of play or show.  Consequently, the harm to plaintiff thus far is permanently irreparable because the plaintiff simply cannot now gain notoriety and prestige for her work since the defendants have so maliciously and reckless saturated the public with the deceit that the motion picture was based entirely on defendant Annie Proulx's short story and the Academy Awards for the motion picture have already been made.  So long as the defendants are allowed to continue distributing and selling the motion picture, short story and book and any of their derivatives, including musical soundtracks from the motion picture, to the public under the false and misleading public relations campaign that the motion picture was derived from the works of defendant Annie Proulx, rather that from the plaintiff's copyrighted literary work, plaintiff endures ongoing harm and that harm is irreparable.

**C.    No Irreparable Harm To The Defendants Or Any Other Persons**

The defendants have pirated the plaintiff's copyrighted novel in violation of federal, and possibly various state, criminal law and should not be allowed to continue to

16

unjustly enrich themselves from their criminal activity. There is no basis under any circumstances to conclude that the defendants would suffer irreparable harm or any harm if this Court enjoined them from further benefiting from their criminal activity and unjust enrichment. Moreover, the defendants have already enjoyed enormous success, financially and reputationally, and by the Academy Awards won from the pirated work. The only person irreparably harmed permanently and currently being irreparably harmed is the plaintiff.

**D.     There Is A Public Interest**

The defendants spent millions and millions of dollars promoting the motion picture under the false notion that it was derived from defendant Annie Proulx's short story rather than from the plaintiff's copyrighted novel. The promotional efforts were successful as demonstrated by the success of the motion picture itself. The public was simply not told the truth about the true source for the expressions and the story depicted in the motion picture. Consequently, there is enormous public interest in knowing that the motion picture was based on the plaintiff's novel.

**III.    THE COURT SHOULD ORDER A NOMINAL BOND**

Plaintiff is an author who has limited means. Plaintiff has presented to this Court compelling and overwhelming evidence that the defendants have pirated her copyrighted novel and used it to created the motion picture. Therefore, plaintiff requests that if the Court finds, as it should, that it will preliminarily enjoin the defendants conduct as she has requested, then plaintiff also requests that any bond required be conservatively nominal due to her limited means.

17

## IV.    **CONCLUSION**

For the foregoing reasons, plaintiff Janice Scott-Blanton respectfully requests this Honorable Court to enter an Order enjoining the defendants from distributing, showing, marketing, or otherwise generating any revenues or profiting or selling in anyway whatsoever in connection with the motion picture and its related screenplay and short story, or any derivatives works of same in any medium or outlet, either domestically or internationally, until this Court renders judgment on plaintiff's copy infringement claim.

Respectfully submitted,

Janice Scott-Blanton
Plaintiff, *pro se*

Janice Scott-Blanton
3578 Wharf Lane
Triangle, Virginia 22172
(703) 861-0028

18

## CERTIFICATE OF SERVICE

I hereby certify that I either hand-delivered or mailed certified-postage-prepaid, first class U. S. Mail the foregoing to the following defendants and or their representative on this the _/3_ day of February 2007:

**UNIVERSAL STUDIOS, INC.,**
**UNIVERSAL CITY STUDIOS PRODUCTIONS, LLLP,**
**UNIVERSAL STUDIOS LICENSING, LLLP,**
**FOCUS FEATURES, LLC,**
**RIVER ROAD ENTERTAINMENT, INC.,**
**DEL MAR PRODUCTIONS, LLC,**
**SIMON & SCHUSTER, INC.,**
**LARRY MCMURTRY,**
**DIANA OSSANA,**
**ANG LEE**
**c/o Steven J. Metalitz, Esquire**                    **HAND-DELIVERED**
**Mitchell, Silberberg & Knupp, LLP,**
**Counsel for Defendants**
**2300 M. Street, N.W., Suite 800**
**Washington, D.C. 20037**

**Advance Publications, Inc.**                    **U. S. MAIL**
**Publisher Of The New Yorker Magazine**
c/o Sabin, Bermant & Gould, LLP, Registered Agent
Four Times Square
New York, NY 10036

**Del Mar Productions, Inc.**                    **U. S. MAIL**
73 Glenville Drive
Rochester, NY 14606

**Annie Proulx**                    **U. S. MAIL**
c/o Dray, Thomson & Dyekman, P.C.
204 E. 22nd Street
Cheyenne, WY 82001

**Chuck Shelton**                    **U. S. MAIL**
c/o VNU Literary Group
770 Broadway
New York, New York 10003

Janice Scott-Blanton, *pro se*

19

**In The**
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Washington, D.C.**

**JANICE SCOTT-BLANTON,** *pro se,*

      **Plaintiff,**

**v.**                              **CIVIL ACTION NO. 1:07cv00098**

**UNIVERSAL STUDIOS, INC., et al.,**

      **Defendants.**

### DECLARATION OF JANICE SCOTT-BLANTON

    I, Janice Scott-Blanton, by my signature below, declare under penalty of perjury before the United States District Court that the following statements of fact are true and accurate representations to the best of my personal knowledge, understanding and belief.

### STATEMENTS OF FACT

    I am an author. I wrote the novel *"My Husband is on the Down Low and I Know About It."* This is a non-fiction novel about a woman whose husband has a secret homosexual relationship and she witnesses him in a homosexual act and remains quiet about it. This novel also includes a self-contained screenplay. The novel was first published on March 15, 2005 and was available from that date for purchase from major booksellers such as Amazon.com, Borders Group, Barnes & Noble, and others, as well as from numerous online Internet booksellers' websites. Before publishing my novel, I obtained a copyright for the novel. I have attached a copy of my certificate for the copyrighting of my novel to this declaration as **Exhibit A.**

1

In June 2006, I watched the motion picture *"Brokeback Mountain"* for the first time. I was immediately struck by the similarity of the motion picture with my novel. This prompted me to compare the motion picture with my novel. In so doing, I have watched the motion picture dozens of times. I have prepared **Chart 1—Individual Similarities,** and **Chart 2—Timeline Similarities;** both charts have been included in the memorandum filed in support of my motion for preliminary injunction. I incorporate Chart 1 and Chart 2 as part of this declaration as though fully set forth herein, and state affirmatively that their contents represent my personal understanding and observation of some, though not all, of the similarities between the motion picture and my novel. Further, I have attached hereto as **Exhibit B** a chart entitled **"Similarities in sequence of events by scenes"** and state affirmatively that its contents represent my personal understanding and observation of some, though not all, of the similarities between the motion picture and my novel.

## DECLARATION AND AFFIRMATION

The foregoing statements of fact are being presented as accurate representations to the best of my personal knowledge, understanding and belief, for which I declare and affirm their accuracy under penalty of perjury by my signature below on this _13_ day of February 2007.

**Janice Scott-Blanton**

*Exhibit A--Copyright Certificate*



**Copyright** | Search Records Results

Registered Works Database (Author Search)
**Search For:** SCOTT-BLANTON, JANICE
*1 Item*
**For a list of commonly used abbreviations that appear in the catalog record, click here.**

---

1. Registration Number: TXu-1-217-828
                 Title: My husbasnd is on the down low ... and I know about it.
                  Note: Cataloged from appl. only.
              Claimant: acJanice Scott-Blanton
               Created: 2004
            Registered: 20Jan05
         Miscellaneous: Rights & permissions info. on original appl. in C.O.
         Special Codes: 1/B

---

Home | Contact Us | Legal Notices | Freedom of Information Act (FOIA) | Library of Congress

U.S. Copyright Office
101 Independence Ave. S.E.
Washington, D.C. 20559-6000
(202) 707-3000

 Search Records Results

Registered Works Database (Author Search)
**Search For:** SCOTT-BLANTON, JANICE, 1963-/SCOTT-BLANTON, JANICE
**Items 1 - 3 of 3**
**For a list of commonly used abbreviations that appear in the catalog record, click here.**

   **Conduct Another Search**

---

| | |
|---|---|
| 1. Registration Number: | TXu-911-536 |
| Title: | The calendar of black history trivia for the year 2000 (version 1) |
| Claimant: | acJanice Scott-Blanton , 1963- |
| Created: | 1999 |
| Registered: | 27Apr99 |
| Special Codes: | 1/B |

---

| | |
|---|---|
| 2. Registration Number: | TXu-1-125-346 |
| Title: | Succulent sex, |
| Description: | 115 p. |
| Note: | Text. |
| Claimant: | acJanice Scott-Blanton |
| Created: | 2003 |
| Registered: | 22Oct03 |
| Special Codes: | 1/B |

---

| | |
|---|---|
| 3. Registration Number: | TXu-1-217-828 |
| Title: | My husbasnd is on the down low ... and I know about it. |
| Note: | Cataloged from appl. only. |
| Claimant: | acJanice Scott-Blanton |
| Created: | 2004 |
| Registered: | 20Jan05 |
| Miscellaneous: | Rights & permissions info. on original appl. in C.O. |
| Special Codes: | 1/B |

---

Home | Contact Us | Legal Notices | Freedom of Information Act (FOIA) | Library of Congress

**U.S. Copyright Office**
101 Independence Ave. S.E.
Washington, D.C. 20559-6000
(202) 707-3000

http://www.loc.gov/cgi-bin/formprocessor/copyright/locis.pl                      6/26/2006

### _Exhibit B—Chart: Similarities in sequence of events by scenes_

# Similarities in sequence of events by scenes

| My Husband is on the Down Low | Brokeback Mountain Motion Picture |
|---|---|
| **1.** James chipped his front tooth on the left side, but later had it fixed…pg 2 | Jack had buckteeth but later had them filed down and capped. |
| **2.** James worked doing road construction…pg 3 | Ennis worked doing road construction. |
| **3.** Annette worked as a department store clerk…pg 3 | Alma worked as a grocery store clerk. |
| **4.** James' parents are dead. His father was killed in a truck accident; his mother had diabetes, suffered a stroke and died from complications…pg 3 | Ennis' parents were killed in a car accident. They drove off a curve. |
| **5.** James and his siblings were raised by their aunt…pg 3 | Ennis was raised by his other siblings. |
| **6.** James has two sisters. They moved away to Houston…pg 3 | Ennis has a sister and brother. His sister married and moved to Casper; brother worked near Worland. |
| **7.** Annette has a sister and a brother…pg 3 | Ennis and Alma are at the drive-in movies. |
| **8.** Annette and James went to the movies…pg 4 | **Ennis & Jack have sex** |
| **9. Annette and James have sex….pg 5 & 27** | 1. Just before dawn, Jack lay on his side. He reached over and grabbed Ennis' hand and put it on his erect penis. |
| 1. About 2:30am, James rolled over to spoon Annette, she felt his had penis…pg 27 | 2. Ennis & Jack stopped for a few seconds |
| 2. Annette asked, "got any condoms Baby?"….pg 5 | 3. Ennis asked, "What are you doing?" |
| 3. Annette & James stopped for a few seconds…pg 5 | 4. Their breathing deepened. |
| 4. Their breathing deepened…pg5 | 5. Jack unbuckled his belt buckle. |
| 5. Annette pulled James' shirt over his head…pg 5 | 6. Ennis unbuckled his belt buckle. |
| 6. James pulled Annette's shirt over her head…pg 5 | 7. Ennis pulled Jack's pants to his knees. |
| 7. They hurriedly unbuttoned and unzipped their shorts…pg 6 | 8. They have sex. |
| 8. They have sex…pg 7 | Jack told Ennis the draft didn't get him. |
| **10.** James talked about going into the military…pg 9 | **Ennis is sitting at a table with 4 chairs inside a diner located in a Greyhound Bus Station…Ch. 17…1:50:14** |
| **11. Annette and James are sitting in a booth in Red Lobster…pg 10** | He's looking down at his plate. He has a slice of pie and a cup of coffee in front of him. He chews. His right hand is on the table. |
| 1. The server walked up to their table and says "Excuse me" …pg 10 | Cassie enters the bus station with Carl. She turns and sees Ennis. They stop. She said "Excuse me" to Carl. |
| 2. Annette cleared her throat…pg 11 | |

| My Husband is on the Down Low | Brokeback Mountain Motion Picture |
|---|---|
| 3. "James," Annette said with a piercing look…pg 11 | Walking towards Ennis' table, Cassie glanced at him. |
| 4. Annette hesitated…pg 11 | She looked down. |
| 5. James narrowed his eyes slightly…pg 11 | She looked up at Ennis again. |
| 6. James turned his head away…pg 11 | She reaches the table and stands looking down at Ennis. |
| 7. Annette paused…pg 12 | With a piercing look she says "Hey…" |
| 8. She took a deep breath…pg 12 | Cassie paused. |
| 9. She looked at him…pg 12 | She let out a deep breath and continues… "Ennis del Mar." |
| 10. Annette's eyes were filled with tears…pg12 | Ennis doesn't look up nor say anything. |
| 11. James raised his head…pg 12 | He raised his head slightly and turned it away, looking around Cassie |
| 12. He saw her crying…pg12 | He looked down at his plate. |
| 13. Tears flowed down Annette's right cheek…pg 12 | She stood looking down at his plate. |
| 14. Annette looked at James…pg 12 | She looked at Ennis. |
| 15. She looked down in shame…pg 12 | Her eyes were teary. |
| 16. James let out a sigh…pg 12 | She asked him where he'd been. |
| 17. His stare was blank…pg 12 | With a piece of pie on his fork, he tapped the fork on the plate. |
| 18. Annette raised her head…pg 12 | Still looking down, he tells her "here and there." |
| 19. She wiped the tears from her right cheek…pg 12 | He eats the piece of pie. |
| 20. Annette was scared and confused…pg 12 | Still standing, she looks down at Ennis. |
| 21. James looked down…pg 12 | Her eyes are teary. |
| 22. He tapped his fork on his plate…pg 12 | She looked down. |
| 23. He began eating…pg 12 | She looks at Ennis and tells him she left word for him with Steve… |
| 24. He said nothing…pg 12 | She paused then said, "…at the ranch. You must've gotten the notes I left at your place. |
| 25. Embarrassed, Annette excused herself and went to the ladies room…pg 12 | Ennis raised his head. |
| 26. Walking back to their table, Annette glanced at James…pg 13 | |

| | |
|---|---|
| 27. Unable to look at James, Annette looked around the restaurant...pg 13 | Ennis narrowed his eyes slightly. |
| 28. She sat down...pg 13 | Ennis looked away at Carl... |
| 29. He looked at her with the same blank expression...pg 13 | He raised his head. |
| 30. Annette looked at his plate...pg 13 | She turns and looked over her left shoulder at Carl. |
| 31. James cleared his throat...pg 13 | She cleared her throat. |
| 32. Annette couldn't look at James...pg 13 | She reaches up and touches her left cheek with her left hand. |
| 33. She focused on the water ring left from the glass of beer...pg 13 | She looked at Ennis and says, "Carl?" |
| 34. She got lost in the circle, thinking repeatedly how much she regretted telling him her secret...pg 13 | She sat down. |
| 35. James looked at her...pg 13 | She cut her eyes to the left towards Carl. |
| 36. He looked down at his plate...pg 13 | She looks at Ennis and says "Carl's nice". |
| 37. He looked up at her...pg 13 | Not wanting to look at Ennis, she looks away to her right. |
| 38. She sat up then cleared her throat...pg 13 | She turns the ring on her left thumb. |
| | She looked at Ennis. |
| | Looking down, she continued to turn the ring on her thumb. |
| | She told Ennis that Carl was nice. |
| | She looked down. |
| | She looked at Ennis. |
| | Ennis looked down and continued to eat. |
| | Ennis doesn't look up. |
| | He chews, and then says "good for you". |
| | She looks at Ennis. |
| | She looks ashamed and hurt. |
| | Still sitting, she says, "yeah...good for me". |
| | Ennis continues to look down at his plate. |
| | She looked at Ennis. |
| | She looked confused and shakes her head slightly to the left and right. |
| | Her eyes welled up. |
| | She tells him she doesn't understand him. |
| | He raised his head. |
| | He looked at her. |
| | He looked down at his plate. |
| | He looked at her and saw her tears. |
| | A tear rolled down her left cheek. |
| | He looked at her and tells her he wasn't any fun anyway. |
| | The tears began to flow. |

| | | | | | | |
|---|---|---|---|---|---|---|
| She tells him girls don't fall in love with fun. | | | | | | |
| She excused herself and leaves the diner and bus station. | | | | | | |
| Ennis continued to look down. | | | | | | |
| He raised his head slightly. | | | | | | |
| She runs out the bus station. | | | | | | |
| Carl goes behind her. | | | | | | |
| Ennis sits at the table emotionless | | | | | | |

| Annette's character | Cassie's character |
|---|---|
| Annette and James are sitting in a booth in Red Lobster…pg 10 | Ennis is sitting at a table with 4 chairs inside a diner located in a Greyhound Bus Station |
| Annette cleared her throat…pg 11 | Cassie enters the bus station with Carl. She turns and sees Ennis. They stop. She said "Excuse me" to Carl. |
| "James," Annette said with a piercing look…pg 11 | Walking towards Ennis' table, Cassie glanced at him. |
| Annette hesitated…pg 11 | She looked down. |
| Annette paused…pg 12 | She looked up at Ennis again. |
| She took a deep breath…pg 12 | She reaches the table and stands looking down at Ennis. |
| She looked at him…pg 12 | With a piercing look she says "Hey…" |
| Annette's eyes were filled with tears…pg12 | She paused. |
| Tears flowed down Annette's right cheek,,pg 12 | She let out a deep breath and continues…"Ennis del Mar." |
| Annette looked at James…pg 12 | She looked down at his plate. |
| She looked down in shame…pg 12 | She looked at Ennis. |
| Annette raised her head…pg 12 | Her eyes were teary. |
| She wiped the tears from her right cheek…pg 12 | She asked him where he'd been. |
| Annette was scared and confused…pg 12 | Still standing, she looks down at Ennis. |
| Embarrassed, Annette excused herself and went to the ladies room…pg 12 | Her eyes are teary. |
| Walking back to their table, Annette glanced at James…pg 13 | She looked down. |
| Unable to look at James, Annette looked around the restaurant…pg 13 | She looks at Ennis and tells him she left word for him with Steve…. |
| She sat down…pg 13 | She paused then said, "…at the ranch. You must've gotten the notes I left at your place. |
| Annette looked at his plate…pg 13 | She turned to her left towards Carl and rolled her eyes. |
| Annette couldn't look at James…pg 13 | She cleared her throat. |
| She focused on the water ring left from the glass of beer…pg 13 | She reaches up and touches her left cheek with her left hand. |
| She got lost in the circle, thinking repeatedly how much she regretted telling him her secret…pg 13 | She looked at Ennis and says, "Carl?" |
| She sat up then cleared her throat…pg 13 | She sat down. |
|  | She cut her eyes to the left towards Carl. |
|  | She looks at Ennis and says "Carl's nice". |
|  | Not wanting to look at Ennis, she looks away to her right. |
|  | She turns the ring on her left thumb. |

| | |
|---|---|
| | Looking down, she continued to turn the ring on her thumb. |
| | She told Ennis that Carl was nice. |
| | She looked down. |
| | She looked at Ennis. |
| | She looks at Ennis. |
| | She looks ashamed and hurt. |
| | Still sitting, she says, "yeah…good for me". |
| | She looked at Ennis. |
| | She looked confused and shakes her head slightly to the left and right. |
| | Her eyes welled up. |
| | She tells him she doesn't understand him. |
| | A tear rolled down her left cheek. |
| | The tears began to flow. |
| | She tells him girls don't fall in love with fun. |
| | She excused herself and leaves the diner and bus station. |
| | She runs out the bus station. |
| | |
| | |
| **"She still couldn't look at him. Instead, she focused on the water ring left from the glass of beer. She got lost in the circle, thinking repeatedly how much she regretted telling him her secret" …Pg 13** | **Not wanting to look at Ennis, Cassie looks away to her right. She looked down and turns the ring on her left thumb. She looked at Ennis. She looked down and continued to turn the ring on her thumb.** |

| James' character | Ennis' character |
|---|---|
| Annette and James are sitting in a booth in Red Lobster...pg 10 | Ennis is sitting at a table with 4 chairs inside a diner located in a Greyhound Bus Station |
| The server walked up to their table and says "Excuse me"...pg 10 | He's looking down at his plate. He has a slice of pie and a cup of coffee in front of him. He chews. His right hand is on the table. |
|  | Ennis doesn't look up nor say anything. |
| James raised his eyebrow and looked at Annette...pg 11 | He raised his head slightly and turned it away, looking around Cassie. |
| James narrowed his eyes slightly...pg 11 | He looked down at his plate. |
| He turned his head away...pg 11 | With a piece of pie on his fork, **he tapped the fork on the plate.** |
| He looked at Annette...pg 11 | Still looking down, he tells her "here and there." |
| James dropped his head in his hands...pg 12 | He eats the piece of pie. |
| James raised his head...pg 12 | Ennis raised his head and looked at Cassie. |
| He saw her crying...pg12 | He narrowed his eyes slightly. |
| James stared at her with a blank expression...pg 12 | He turned away to look at Carl... |
| James let out a sigh...pg 12 | Ennis raised his head... |
| James looked down into his plate...pg 12 | Ennis looked down and continued to eat. |
| **He tapped his fork on his plate...pg 12** | Ennis doesn't look up. |
| He began eating...pg 12 | He chews, and then says "good for you". |
| He said nothing...pg 12 | Ennis continues to look down at his plate. |
| He looked at her with the same blank expression...pg 13 | He raised his head. |
| James cleared his throat...pg 13 | He looked at her. |
| James looked at her...pg 13 | He looked down at his plate. |
| He looked down at his plate...pg 13 | Ennis raised his head. |
| He raised his head...pg 13 | He saw her tears. |
| He looked at Annette...pg 13 | He looked at her and tells her he wasn't any fun anyway. |
|  | Ennis continued to look down. |
|  | He raised his head slightly. |
|  | Ennis sits at the table emotionless |

## Similarities of the sequence of events from
### *My Husband is on the Down Low*, Part 3: Her Demise
### & *Brokeback Mountain* Motion Picture

**Part 3: Her Demise (Page 176)**

| | |
|---|---|
| Annette suggest going to the church social | Jack offers Ennis a business proposition for a cow & calf operation so they could be together |
| Annette gained weight | Alma works over-time |
| Annette's face is more round | Ennis confronts Alma on working over-time |
| Annette's jeans are fitting snug | Ennis & Alma argue |
| Annette began working long, late hours | Alma Jr. & Jenny hear them argue and they stop swinging |
| James confronts her on working over-time | Alma neglects the children. She leave without saying good-bye |
| Annette & James argue | Ennis saw the girls had stopped swinging and asked if they needed a push |
| Annette has been neglecting Kynosha | |
| Kynosha hear them argue and stand in the hallway | Alma's gained weight |
| James takes her back into her room | Alma's face is more round |
| Annette read James' journal. Unbeknownst to Annette, she read that Thomas had come to town | Alma's wearing snug fitting jeans |
| James wrote in his journal that Thomas wanted to start a business with an old friend and that Thomas and his friend would one day be together | Alma read Ennis' postcard from Jack. Unbeknownst to her, Jack is coming to town |
| | Alma suggest going to the church social |
| Annette makes excuses not to have sex with James | Alma makes excuses not to have sex with Ennis |
| | |

## Similarities of the sequence of events from My Husband is on the Down Low, Page 50 & Brokeback Mountain Motion Picture

| Annette is in the kitchen cooking dinner; James comes home from work | Alma is in the kitchen washing clothes in the sink; Ennis comes home from work |
|---|---|
| James comes home from work | Ennis comes home from work |
| Annette's back is facing James | Alma's back is facing Ennis |
| James sees Annette taking a pan from the oven | Ennis sees Alma washing clothes in the sink and cooking |
| James walked up behind Annette | Ennis walked up behind Alma |
| James grabbed her by the waist | Ennis put his right hand on Alma'sr right shoulder |
| He moved in a slow circular motion on her butt | Ennis caressed Alma's shoulder gently |
| James asked, "Is this what you've been waiting on, woman?" | Ennis moved his hand to Alma's neck |
| Annette turned | Ennis asked, "How my girls doing?" |
| Annette glanced at James out the corner of her eye | Ennis leaned down to kiss Alma on the cheek |
| Annette said, "Boy, you'd better move before you make me drop this pan" | Alma turned and reached up to kiss Ennis |
| Annette turned and reached up to kiss James | Alma said, "I'm alright. Jenny's still got a runny nose." |
| James leans down slightly and grabbed Annette's buttocks | Ennis looked out the window |
| James tells Annette that he could get used to coming home to a home-cooked meal everyday, and jokingly asked, "Would you like to get married now?" Annette laughed and said, "No. Why don't you take me into the bedroom and fuck me instead?" | Alma glanced at Ennis out the corner of her eye |
| Annette turned off the stove | Ennis exits the kitchen |
| Annette and James leaves the kitchen | He glances at the unfinished cut-up carrots on the counter and the pots on the stove |
| | Ennis goes into the girls room |
| James and Annette went into the bedroom | Alma yells from the kitchen and asked Ennis to wipe Alma Jr's runny nose. |
| They have sex | Ennis goes into the bedroom |
| Annette showered | |
| She came out of the bedroom wearing James' silk paisley print robe. | Ennis is wearing a white wife-beater t-shirt and a pair of paisley print pajama pants. |

| Alpha forced Fatma in the bedroom. | |
|---|---|
| They have sex. | |