## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————

**JANICE SCOTT-BLANTON,** *pro se* )
)
Plaintiff, )
)
v. )                         Civil Case No. **1.07cv00098 (RMU)**
)
**UNIVERSAL CITY STUDIOS** )
**PRODUCTIONS LLLP,** *et al.,* )
)
Defendants. )
———————————————————)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS

### Introduction

This is a frivolous copyright infringement action. Plaintiff, the author of a book entitled *My Husband Is On The Down Low and I Know About It* ("*Down Low*"), has accused Defendants (screenwriters, authors, production companies, a book publisher, a magazine publisher, and a motion picture studio and its affiliates) of copyright infringement. Her bizarre theory is that the award-winning motion picture *Brokeback Mountain*, as well as the 1997 short story and 1998 screenplay on which the motion picture is based, all "pirated" the characters, plot, and story of *Down Low*. Plaintiff, however, concedes that *Down Low* first was published in March 2005. This was eight years after the short story *Brokeback Mountain* was published; seven years after the screenplay was first completed; seven months after filming of the motion picture ended; and two months after all editing of the film was completed.

Summary judgment is warranted here because the undisputed evidence makes Plaintiff's claims of "copying" factually impossible. Contrary to Plaintiff's unsupported allegations that "Defendants have misappropriated Plaintiff's labor and arrogantly thrust her copyrighted work

before the public as a derivative of another author's work" (Complaint, ¶ 4), in fact every one of Defendants' works was completed long before the Plaintiff published her book.  Even before November 2004, when Plaintiff claims she "originated and created" her novel (Complaint, ¶ 19), all of the scenes, incidents, characters, and dialog contained in the final motion picture already had been created and placed on film.

Defendants could not possibly have had access to Plaintiff's work before they created their own.  Consequently, Defendants could not have copied *Down Low*.  Accordingly, the Court should grant Defendants' motion and dismiss Plaintiff's lawsuit in its entirety.

## I.    STATEMENT OF FACTS.

**The Short Story**.  In October 1997, *The New Yorker* Magazine published a short story by Pulitzer Prize-winning author Annie Proulx entitled *Brokeback Mountain* (the "Short Story"). Declaration of Marc E. Mayer ("Mayer Decl."), Ex. A [*The New Yorke*r, October 13, 1997]; Declaration of Nan Graham ("Graham Decl."), ¶ 2.   The Short Story received the O. Henry Award for short fiction and the National Magazine Award.  Mayer Decl., Exs. B & C.  The United States District Court for the Southern District of New York described the plot of *Brokeback Mountain* as "an epic love story set in the American West during the summer of 1963 [that] tells the story of two young men – a ranch hand and a rodeo cowboy – who unexpectedly forge a complicated lifelong relationship and a decades-long love affair that they try to hide from the rest of the world."  Berlent v. Focus Features, LLC, Case No. 06 Civ. 2834, 2006 WL 1594478, at *1 (S.D.N.Y. June 8, 2006).

The Short Story, with the addition of a new introductory passage (less than one page in length) and two very slight changes in the description of one of the two main characters, was re-published in 1999 by Scribner (an imprint of defendant Simon & Schuster, Inc.) in a collection of short stories entitled *Close Range: Wyoming Stories*.  See Mayer Decl., Exs. D & E; Graham Decl., ¶ 2 & Ex. 1.  The story as published in *Close Range* in 1999 was re-published, ***verbatim***, in 2005 and 2006 (also by Scribner) both as a stand-alone book (entitled *Brokeback Mountain*)

and as part of the book entitled *Brokeback Mountain: Story to Screenplay*.  Id., Exs. F & G;

Graham Decl., ¶¶ 3 & 4 & Exs. 2 & 3.[1]

**The Screenplay.**  Shortly after the original 1997 publication of the Short Story in *The New Yorker*, screenwriters Diana Ossana and Larry McMurtry acquired the screenplay rights.  In early 1998, Ossana and McMurtry completed a draft of a screenplay (also entitled *Brokeback Mountain*) (the "Screenplay").  Mayer Decl., Ex. H.  On January 26, 1999, McMurtry and Ossana assigned the copyright in and to the Screenplay to Columbia Pictures Industries, Inc., which registered the assignment on March 23, 1999, and separately registered the copyright in the Screenplay (as an unpublished work) on April 6, 2000.  See Mayer Decl., Exs. I & J (copyright registration: PAU:2-417-125).  Some additional edits to the Screenplay subsequently were made (just prior to the filming of the Motion Picture *Brokeback Mountain*), and the final shooting script was completed by May 20, 2004.  Declaration of Jeffrey Roth ("Roth Decl."), ¶ 2, Ex. A; Mayer Decl., Ex K.

**The Motion Picture.**  Principal photography (i.e., the shooting and filming) for the Motion Picture *Brokeback Mountain* (the "Motion Picture") commenced on or about May 25, 2004, in Alberta, Canada.  Roth Decl., ¶ 3.  Principal photography of the motion picture was completed in August 2004; by then, all of the footage for the motion picture had been created. Id.  Thus, by August 2004, virtually everything (including all of the dialog and plot elements) contained in the final theatrical release of the Motion Picture was finished.  Id.[2]

---

[1]  Plaintiff apparently alleges in her Complaint that at the time the Short Story was published in book form in 2005 it was "reworked" to incorporate elements of her book.  Complaint, ¶¶ 12, 34. The version of *Brokeback Mountain* published in 2005 (both alone as part of *Story to Screenplay*) was *identical* to the version published in 1999 (six years prior to the publication of Plaintiff's book) in *Close Range*.  See Graham Decl., ¶¶ 3 & 4 & Exs. 1-3.  Likewise, contrary to Plaintiff's claim, the version of *Brokeback Mountain* that was published on the Internet by *The New Yorker* in 2005 is identical to the version that was published in the October 13, 1997 issue. Compare Mayer Decl., Ex. A with Complaint, Ex. F.

[2]  Defendant Focus Features, LLC, was the production company responsible for the filming, post-production, and theatrical distribution of the Motion Picture.  The Universal defendants (Universal City Studios Productions LLLP, and Universal Studios Licensing LLLP) own certain
(…continued)

On or about September 5, 2004, the Motion Picture entered the "post production" phase. Roth Decl., ¶ 4. During "post-production," the footage is edited; rough cuts of the film are created; music and sound effects are created, composed and/or synchronized with the footage; and visual effects are determined and polished. Id. On January 14, 2005, the Motion Picture was "locked," meaning that editing on all of the visual elements and dialog was completed. Id., ¶ 5, Ex. C. On or about March 9, 2005, the final print (i.e., the "printmaster") was created, which was a final version of the Motion Picture (containing all of the dialog, music, beginning and end credits, and visual and audio effects) used to make the "prints" for delivery and distribution. Id., ¶ 6. After that time, the only work done on the film was highly technical, quality control work, which had nothing to do with the dialog, story, or characters. Id.[3]

**Down Low.** According to her Complaint, in November 2004 Plaintiff "originated and created" the novel *My Husband Is On The Down Low And I Know About It* ("*Down Low*"). See Complaint, ¶ 19. *Down Low* was self-published by Plaintiff on March 15, 2005 – nearly eight years after the Short Story and Screenplay were written, six months after principal photography of the Motion Picture had been completed, two months after all the visual elements of the Motion Picture were "locked," and six days after the final printmaster of the Motion Picture was completed. Complaint, ¶ 22.

*Down Low*, in the author's words, is "[b]ased on a true story" about "the life of a wife who is confronted with her military husband's lifestyle of living on the 'Down Low.'" Mayer

---

(…continued)

rights to exploit the Motion Picture through various channels, including via DVD, pay-per-view and cable broadcasting.

[3] The Motion Picture (released in theaters in December 2005) was extremely well received by audiences and critics, was nominated for eight Academy Awards (including for "Best Picture"), and received the Academy Award for Best Adapted Screenplay, Best Director and Best Original Score. Mayer Decl., Exs. F & G. It also received the Golden Globe Award for Best Picture, Best Director, Best Screenplay, and Best Original Song; the New York Film Critic's Circle Award for Best Picture; and the Golden Lion Award for Best Picture at the 2005 Venice International Film Festival. Id.

Decl., Ex. L [*Down Low*].   Although Plaintiff claims that *Down Low* has been in distribution since March 2005, she has not submitted any evidence establishing that even a single copy of *Down Low* ever has been sold or that anyone employed by or affiliated with Defendants had bought it (or even had seen it) prior to the plaintiff raising her claim.[4]

**Plaintiff's Infringement Claims.**  Plaintiff claims that on June 11, 2006 (approximately six months after the theatrical release of the Motion Picture), she watched the Motion Picture for the first time and that it was "evident" and "clear" to her at that time that her novel "had been stolen and adapted into the motion picture film *Brokeback Mountain*."  Complaint, Ex. P, "Background" ¶ 3.  On January 16, 2007, Plaintiff filed this lawsuit against 14 Defendants, including various Universal-affiliated motion picture studios and licensing entities, production companies, *The New Yorker*, Simon & Schuster (the publisher of three books containing *Brokeback Mountain*), Ossana, McMurtry, Annie Proulx, director Ang Lee, and others. Plaintiff's Complaint asserted a single count for copyright infringement, premised on her allegations that "[s]ubstantial [s]imilarities [exist] between Plaintiff's literary work and *Brokeback Mountain Motion Picture, Brokeback Mountain Short Story 2005,* and *Brokeback Mountain Story to Screenplay 2005*" and as a result "Defendants have violated Plaintiff's exclusive rights…protected under the Copyright Act of 1976."  Complaint, ¶¶ 39, 40.[5]

## II.     THE LEGAL STANDARD.

A motion for summary judgment should be granted "if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

---

[4]  In addition to the timing issues discussed above, this failure also precludes Plaintiff from prevailing on the issue of whether Defendants had access to her work.  See Jason v. Fonda, 698 F.2d 966, 967 (9th Cir. 1982) ("bare possibility" of access is insufficient).

[5]  On February 13, 2007 (a month after filing her lawsuit), Plaintiff, without any prior notice to Defendants, (see LCvR 7(m)), and without an accompanying proposed order, (see LCvR 7(c)), filed a Motion for a Preliminary Injunction.  Defendants have opposed this motion and it is currently *sub judice*.

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See Taylor v. Rice, 451 F.3d 898, 904 (D.C. Cir. 2006). The moving party need not disprove the nonmoving party's claim. Instead, the moving party need only highlight for the court that there is an absence of evidence to support the nonmoving party's case. "By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment." Mavity v. Fraas, 456 F. Supp. 2d 29, 32 (D.D.C. 2006). The nonmoving party must then "establish more than 'the mere existence of a scintilla of evidence' in support of its position[,]" such that a reasonable jury could find in the nonmoving party's favor. Id., quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

**III.    DEFENDANTS COULD NOT HAVE INFRINGED *DOWN LOW* BECAUSE THE *BROKEBACK MOUNTAIN* SHORT STORY, SCREENPLAY, AND MOTION PICTURE WERE CREATED <u>PRIOR TO</u> THE CREATION OR PUBLICATION OF *DOWN LOW*.**

In order to prevail on her claims for copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). Where, as here, the plaintiff is without any direct evidence of "copying," the plaintiff must demonstrate that the defendants "had access to the copyrighted work and that the works are 'substantially similar.'" Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1248 (11th Cir. 1999); Reader's Digest Ass'n, Inc. v. Conservative Digest, Inc., 821 F.2d 800, 806 (D.C. Cir. 1987) ("A court may find copying in a copyright infringement action if the defendant's work is substantially similar to the plaintiff's work and the defendant had access to the plaintiff's work.").

6

Summary judgment is appropriate here because the undisputed facts preclude even the *possibility* of access by Defendants to Plaintiff's work.[6]  This is because all of the allegedly infringing works were written, created, and filmed *prior to* the publication (or, to a great extent, even the creation) of *Down Low*:

- The Short Story originally was published in the October 13, 1997, issue of *The New Yorker*.  See Mayer Decl., Ex. A; Complaint, ¶ 34.[7]  The Short Story was re-published, with the addition of a short introductory passage and some very minor changes, in *1999* as part of *Close Range: Wyoming Stories*.  Mayer Decl., Exs. D & E; Graham Decl., ¶ 2 & Ex. 1. Contrary to Plaintiff's allegations (see Complaint, ¶¶ 12, 34), it was that same 1999 version (which was substantively identical to, and only slightly altered from, the 1997 version) that later was re-published in 2005 and 2006 in *Brokeback Mountain: Story to Screenplay* and as a stand-alone book.  Graham Decl., ¶¶ 3-4 & Exs. 2 & 3.

- The Screenplay was created in 1998, registered with the United States Copyright Office in 2000, and in its final edited form by May 2004.  Roth Decl., ¶ 2; Mayer Decl., Exs. J & K.

- Principal photography on the Motion Picture was completed by August 2004, the Motion Picture was in post-production throughout the remainder of 2004 and early 2005, and the final print was completed in March 2005.  Roth Decl., ¶¶ 3-5.  Accordingly, all of the footage,

_____

[6] Although, because there was no access, the Court need not reach the issue of substantial similarity, even a cursory review of *Brokeback Mountain* and *Down Low* confirms that the works are entirely different, both in "total concept and feel" and in their individual components.  See Johnson v. Gordon, 409 F.3d 12, 18 (1st Cir. 2005) ("The key is whether the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the works' aesthetic appeal as the same."); see also Costello v. Loew's Inc., 159 F. Supp. 782, 788 (D.D.C. 1958) ("[O]nly a strained interpretation and hypercritical dissection of small segments of [the plaintiff's] drama or defendant's picture, or both" could lead to a finding of similarity.).

[7] Contrary to Plaintiff's allegations (see Complaint, ¶ 12), that very same version of the Short Story, with no edits or revisions, was made available on the Internet by *The New Yorker* Magazine (as a "From The Archives" offering) in 2005.  There is no such work as *Brokeback Mountain Short Story 2005*.

acting, and dialog contained in the Motion Picture was placed on film almost a year before *Down Low* was published. And by the time *Down Low* was published, the Motion Picture was in its final form and no further editing took place.

There is no dispute that *Down Low* was not published until March 2005 (and, for that matter, was not even conceived of until November 2004). Accordingly, all of the characters, scenes, incidents, and events in the Short Story, the Screenplay, and the Motion Picture that purportedly give rise to Plaintiff's infringement claims were created and completed months or years prior to the publication of *Down Low*.[8] Defendants could not have had access to Plaintiff's work before creating their own. Plaintiff has not produced or presented any evidence to the contrary. Accordingly, there is no basis in law or in fact for any of Plaintiff's claims for copyright infringement. See Glover v. Austin, 447 F. Supp. 2d 357, 361-62 (S.D.N.Y. 2006) (summary judgment where evidence was undisputed that defendant's work was created prior to plaintiff's work); Pellegrino v. Am. Greetings Corp., 592 F. Supp. 459, 461-62 (W.D.S.D. 1984) (summary judgment for defendant where the defendant's allegedly infringing cartoon character "was in a copyrighted work before the Plaintiff ever showed his work to anyone"), aff'd, 760 F.2d 272 (8th Cir. 1985); Hebert v. Wicklund, 744 F. 2d 218, 219 (1st Cir. 1984) (affirming summary judgment where plaintiff had produced no evidence to counter the defendant's

---

[8]  The absence of copying additionally is confirmed by the fact that virtually every one of the purported "substantial similarities" in the plots and characters of the two works that Plaintiff claims were copied from *Down Low* were present (virtually word-for-word) in the ***1997*** Short Story (published more than ***eight years*** prior to *Down Low*). See Complaint, ¶ 40; see also Mayer Decl., Ex. M [Chart of similarities]. Plaintiff cites two or three purported similarities that are not derived directly from the Short Story, but rather from the Screenplay that was completed in 2004. In fact, some of the features that Plaintiff calls "similarities" are diametrical opposites. See, e.g., Complaint, Similarities (Docket No. 1-2 at 2-4) (in *Down Low*, "Annette gives birth to a baby ***girl***" and "James ***couldn't be there***"; in *Brokeback Mountain*, "Lureen gives birth to a baby ***boy***" and "Jack ***was there***") (emphasis added).

evidence that she had written and marketed the allegedly infringing work long before receiving plaintiff's copyrighted material).[9]

## IV.   TO THE EXTENT PLAINTIFF HAS PURPORTED TO ALLEGE CLAIMS FOR RELIEF UNDER THE LANHAM ACT (OR OTHER LAWS) SUCH CLAIMS LIKEWISE ARE MERITLESS.

Plaintiff's Complaint makes vague reference to a claim for false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a) (see ¶ 4, 41).  This claim should be dismissed for the basic, threshold reason that such claim is entirely derivative of, and is premised on the exact same allegations that give rise to, Plaintiff's claims for copyright infringement.  Because those claims are legally and factually meritless, Plaintiff's Lanham Act claims likewise fail.  The foregoing aside, it is well-established that claims for "passing-off" or misattribution that are premised entirely upon the alleged appropriation of a plaintiff's copyrighted work do not state a claim under the Lanham Act.  Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 34-37 (2003) (rejecting Lanham Act claims premised on the copying of plaintiff's work without attribution: "[w]e conclude that the phrase ['origin of goods'] refers to the producer of the tangible goods that are offered for sale, and not to the *author* of any idea, concept, or communication embodied in those goods.") (emphasis added).[10]

---

[9]   In some circuits, copying can be shown without proof of access if the two works are "strikingly similar."  See Arnstein v. Porter, 154 F.2d 464, 468-69 (2d Cir. 1946).  The striking similarity standard is irrelevant in this case because it applies only when "the accused work is strikingly similar *to a pre-existing* complaining work." Stratchborneo v. Arc Music Corp., 357 F. Supp. 1393, 1402 (S.D.N.Y. 1973) (emphasis added). Here, the accused work pre-dates the complaining work.

[10] Plaintiff's Amended Complaint (if accepted for filing) vaguely asserts claims under the Sherman Act, state law unfair competition and unjust enrichment, and the laws of "each foreign country in which the plaintiffs generated revenues." Amended Complaint, ¶¶ 17-18.  Each of these claims fail because they are premised on the identical alleged conduct that give rise to Plaintiff's claims under the Copyright Act.  See Whitehead v. Time-Warner, Inc., Case No. 98-0257, 2000 U.S. Dist. LEXIS 20765, *5; Copy. L. Rep. (CCH) ¶28,290 (D.D.C. June 14, 2000) (dismissing eight related claims premised on same alleged infringement of plaintiff's copyright: "Because plaintiff has failed to establish copyright infringement, however, he fails to state a

(…continued)

## Conclusion

For the foregoing reasons, Defendants respectfully request that the Court grant this Motion for Summary Judgment and dismiss Plaintiff's action in its entirety.

Date:  March 23, 2007                    Submitted by:


/s/ Steven J. Metalitz
Steven J. Metalitz (D.C. Bar No. 944603)
MITCHELL SILBERBERG & KNUPP LLP
2300 M Street, N.W., Suite 800
Washington, D.C. 20037
(202) 973-8109 (Telephone)
(202) 973-8110 (Facsimile)

Marc E. Mayer (*pro hac vice*)
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
(310) 312-2000 (Telephone)
(310) 312-3100 (Facsimile)
*Attorneys for Defendants*

---

(…continued)
claim that would support any of these eight derivative claims."). In addition, (1) the state law claims Plaintiff attempts to assert are pre-empted by the Copyright Act (17 U.S.C. § 301); (2) her foreign law claims are beyond the subject matter jurisdiction of this court and transgress the "undisputed axiom" that "the United States' copyright laws have no application to extraterritorial infringement," see Subafilms, Ltd. v. MGM-Pathe Communications Co., 24 F.3d 1088, 1095 (9th Cir. 1994); and (3) Plaintiff fails to allege any of the elements of a claim under the Sherman Act, including that Defendants had dominant market power in a relevant market, that they engaged in anticompetitive conduct, or that such conduct caused antitrust injury (e.g., a decrease in competition in the relevant market.) See Eastman Kodak Co. v. Image Technical Servs. Inc., 504 U.S. 451, 481-82 (1992); Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP, 540 U.S. 398, 410-16 (2004).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS has been served, via Federal Express and via the Court's electronic filing system, to the following address on March 23, 2007:

Janice Scott-Blanton
3578 Wharf Lane
Triangle, VA 22172

/s/ Marc E. Mayer
Marc E. Mayer (*pro hac vice*)
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
(310) 312-2000 (Telephone)
(310) 312-3100 (Facsimile)
*Attorneys for Defendants*

11

1239058.2