UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JANICE SCOTT-BLANTON,** *pro se*  )<br> )<br>Plaintiff,  )<br> )<br>v.  )<br> )<br>**UNIVERSAL CITY STUDIOS**  )<br>**PRODUCTIONS LLLP,** *et al.*,  )<br> )<br>Defendants.  )<br> ) | Civil Case No. **1.07cv00098 (RMU)** |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS**

**Introduction and Summary**

The Memorandum of Plaintiff Janice Scott-Blanton in Opposition to Defendants' Motion for Summary Judgment fails to offer anything that possibly could overcome the single fact that mandates summary judgment: All of the *Brokeback Mountain* works at issue were created by Defendants prior to the publication of "My Husband is on the Down Low and I Know About It" ("Down Low") by the Plaintiff.[1] Even Plaintiff appears to concede, as she must, that this basic fact completely negates the possibility of copying and thereby disposes of her claims. See Glover v. Austin, 447 F. Supp. 2d 357, 361-62 (S.D.N.Y. 2006). Rather than face this reality, Plaintiff instead asserts that "defendants are attempting to work a fraud upon this Court with manipulated evidence and by withholding evidence." Opposition ("Opp.") at 3. This assertion

---

[1] Plaintiff has failed to include with her opposition a separate statement of genuine issues setting forth "all material facts as to which it is contended there exists a genuine issue necessary to be litigated." LCvR 56.1. Accordingly, this Court may assume that the facts contained in Defendants' separate statement are admitted. Id.

rests on speculation, innuendo, and irrelevancy, not on evidence. Accordingly, it cannot defeat summary judgment. Exxon Corp. v. Federal Trade Comm'n, 663 F.2d 120, 126-27 (D.C. Cir. 1980) ("It is well-settled that [c]onclusory allegations unsupported by factual data will not create a triable issue of fact."); Glover, 447 F. Supp. 2d at 361 ("Plaintiffs, to avoid summary judgment, may not rely simply on conclusory allegations or speculation ... but instead must offer evidence to show that [their] version of the events is not wholly fanciful.")

Plaintiff likewise has not provided any support for her request for a continuance of Defendants' Motion and discovery pursuant to Fed. R. Civ. P. 56(f). She does not identify any specific evidence that she expects to uncover. Nor does she offer any explanation as to why she is unable to oppose Defendants' motion. Instead, her request is premised entirely on her contention that through (unspecified) "discovery" she might find (also unspecified) "facts that create genuine issues of the defendants' asserted undisputed facts." Opp. at 12. Of course, it was Plaintiff's obligation to fully investigate her claims **before** she filed suit. Fed. R. Civ. P. 11. Having evidently failed to do so, she cannot now invoke Rule 56(f) to defer ruling on Defendants' Motion merely because she hopes that some hypothetical discovery might uncover something that would buttress her "side of the story."

I. **PLAINTIFF'S PURPORTED "EVIDENCE" HAS NO BEARING ON, AND DOES NOT CREATE AN ISSUE OF DISPUTED FACT CONCERNING, THE DATE OF CREATION OF THE SHORT STORY, SCREENPLAY, OR MOTION PICTURE.**

The evidence submitted with Defendants' motion (which includes copies of the works at issue, production calendars and reports, copyright registrations, and sworn witness testimony) unequivocally proves each of the following facts:

- The Short Story *Brokeback Mountain* originally was published in the October 13, 1997, issue of *The New Yorker*. See Declaration of Marc E. Mayer ("Mayer Decl."), Ex. A; Complaint, ¶ 34. It was republished with very minor changes in **1999** as part of "Close Range: Wyoming Stories" ("Close Range"), and every subsequent publication in 2005 and 2006 has been of the identical text. Declaration of Nan Graham ("Graham Decl."), ¶¶ 3-4 & Exs. 1-3.

2

- The *Brokeback Mountain* Screenplay was created in 1998, registered with the United States Copyright Office in 2000, and in its final edited form by May 2004. Declaration of Jeffrey Roth ("Roth Decl."), ¶ 2; Mayer Decl., Exs. J & K.

- Principal photography on the Motion Picture *Brokeback Mountain* was completed by August 2004, the Motion Picture was in post-production throughout the remainder of 2004 and early 2005, and the final print was completed in March 2005. Roth Decl., ¶¶ 3-5.

- "Down Low" first was published in March 2005 -- eight years after the Short Story was published, seven years after the Screenplay was first completed, seven months after filming of the Motion Picture ended, and two months after all editing of the film was completed.

Unable to refute this evidence, Plaintiff dismisses it as "self-serving" and claims (without any evidentiary support) that Defendants' evidence was fabricated "in the face of civil litigation." Opp. at 2-3.[2] The foundation for this reckless charge consists, in its entirety, of the following: (1) the copyright registration for the Motion Picture reflects a "completion" date of 2005 (Opp. at 3); (2) copyright notices on some of the republications of the Short Story and Screenplay refer to the year 2005 (Opp. at 5, 6); (3) the screenwriters and authors of *Brokeback Mountain* gave interviews acknowledging that some elements of the Short Story were changed or expanded upon in the Screenplay and Motion Picture, (Opp. at 4-5)[3]; and (4) four scenes that screenwriters Ossana and McMurtry once referred to as "new" germinated from material contained in the original 1997 Short Story (Opp. at 7-10). Even if accepted as true, none of these factual contentions contradict in any way the specific and still uncontested evidence that each of the *Brokeback Mountain* works was created prior to "Down Low," and thus that there was

---

[2] In fact, the basic timeline of the creation of the Motion Picture (and thus of the Screenplay) was communicated to Plaintiff months before she even filed this lawsuit, in the letter she attached to her complaint as Exhibit N.

[3] Plaintiff also cites an interview in which the director, Ang Lee, allegedly refers to a "novel" as a source for the Motion Picture. As Plaintiff notes, Mr. Lee, while named as a defendant, has never been served nor entered an appearance in this litigation. In any event, the statement is irrelevant.

3

neither access by Defendants nor copying. See Glover, 447 F. Supp. 2d at 362-63 (Plaintiff cannot avoid summary judgment by attempting to cast doubt on evidence of prior creation through "conspiracy theories concerning deception and coverup.") If anything, Plaintiff's evidence actually confirms the *absence* of disputed factual issues.

The Motion Picture. Plaintiff's argument that because the copyright registration for the Motion Picture reflects it was *completed* in 2005, the Motion Picture could not have been *created* prior to the publication of her novel in March 2005, misses the point. The Motion Picture was filmed in mid-2004, edited in late 2004 and early 2005, and was substantively complete (with the exception of purely technical edits) by March 2005. Roth Decl., ¶¶ 3-5. Accordingly, all of the elements of the Motion Picture that Plaintiff *claims are infringing* (i.e., the scenes, dialog, and characters) were created prior to the publication of, and thus could not have been copied from, "Down Low."

Screenplay. Plaintiff offers nothing to contradict the testimony and documentary evidence that the final version of the screenplay (i.e., the shooting script) used to film the Motion Picture was completed in 2004. (Of course, because the Motion Picture was filmed in 2004, the Screenplay must have been completed before that time.) Her claim that the version of the Screenplay contained in the "Story to Screenplay" publication contains the caption "October 2005" is irrelevant. Even if changes had been made to the Screenplay between 2004 and 2005 (and there is no evidence of this), Plaintiff has never claimed that the version of the Screenplay published in "Story to Screenplay" contains any allegedly infringing elements that were not also contained in the Motion Picture as filmed in 2004.[4]

Short Story. Plaintiff does not, and cannot, dispute that the Short Story remained substantively the same between its original publication in *The New Yorker* in 1997 and its re-

---

[4] Plaintiff also charges that copyright registrations filed in 2000 and 2004 reflect that the deposit copies submitted with each application contained a different number of pages. But this purported page number "discrepancy" indicates only that the work was revised between 2000 and *2004*. Thus, any changes to the screenplay were made *prior to* the publication of "Down Low."

4

publication in 1999 and 2005.[5]  Indeed, one need only compare the version of the Short Story published in 1999 in "Close Range" to the version re-published in 2005 in "Brokeback Mountain," and "Story to Screenplay" for confirmation of this fact.  Compare Graham Decl., Ex. 1 with Graham Decl., Exs. 2 & 3.  Plaintiff's discussion of British Library practices is entirely irrelevant.  The pages that Plaintiff has attached from the British Library website reflect only that the 1999 book entitled "Close Range" was re-published in the U.K. in 2006.  See Opp., Ex. A.  There is no evidence that the version of *Brokeback Mountain* contained therein was any different from the 1999 version.[6]  Likewise, that a separate copyright registration exists for "Story to Screenplay" or "Brokeback Mountain" (as a stand-alone book) means only that the story was re-published in these books (with a different cover and different accompanying material) – not that the story was changed; as set forth above, it was not.

Since plaintiff cannot refute the evidence propounded by Defendants, she instead seeks to divert attention to media interviews conducted with the screenwriters of *Brokeback Mountain* (Ossama and McMurtry) and director Ang Lee, portraying these interviews as "quite telling" and "expos[ing] discrepancies" in Defendants' evidence.  Opp. at 4.  As a threshold matter, the substance of these interviews is inadmissible hearsay and thus cannot be considered by this Court.  See Metro. Council of NAACP Branches v. FCC, 46 F.3d 1154, 1165 (D.C. Cir. 1995) ("We seriously question whether a New York Times article is admissible evidence of the truthfulness of its content."); Larez v. Los Angeles, 946 F.2d 630, 642 (9th Cir. 1991) (printed

---

[5]  Plaintiff makes much of a single blank entry in the copyright application for the October 13, 1997, issue of *The New Yorker*, in which the Short Story first appeared, hinting darkly that it is "not insignificant."  Opp at 6, n.4.  In fact, this omission has no conceivable significance for this case and surely does nothing to create a factual dispute about the publication date of the Short Story.

[6]  Plaintiff claims that she was unable to locate a 1997 copyright registration for *Brokeback Mountain* where "Dead Line, Ltd." is listed as the copyright claimant.  This is irrelevant, because there is no requirement that a work be registered in the year it is published (or even that it be registered at all).  See 17 U.S.C. § 408 (copyright may be registered "at any time"; "[s]uch registration is not a condition of copyright protection.").

5

quotations attributed to defendant are inadmissible hearsay and do not constitute nonhearsay admissions of a party opponent); In re Baan Co. Securities Litigation, No. 98-2465 (ESH/JMF), 2002 U.S. Dist. LEXIS 10474, at * 18 (D.D.C. June 10, 2002) ("[N]ewspaper articles are hearsay even if they contain a statement that might qualify as an admission against interest. This is so because the truthfulness of the proposition that the party uttered the statement claimed to be an admission is entirely dependent upon the credibility of the reporter who claims to have heard it.").

Even if the substance of these interviews were admissible, the hearsay statements relied upon by Plaintiff, at best, prove only that the Short Story was adapted and expanded in order to create the Screenplay and Motion Picture. That is not in dispute. None of the cited statements addresses the dates in which the Screenplay and Motion Picture were created, and thus are not evidence of any factual dispute on the critical issue of whether both the Screenplay and Motion Picture were created prior to the publication of "Down Low."

Finally, Plaintiff asserts that, in one of these interviews, the screenwriters stated that four scenes in the Motion Picture were created specifically for the Screenplay. She then dissects these scenes to refute this statement, showing that these scenes were all present in some form in the original 1997 Short Story (and the subsequent 1999 version). Opp. at 8-10. Of course, if this proves anything, it proves that these "new" scenes were present in the original 1997 Short Story and thus could ***not*** have been copied from "Down Low."[7] Casting doubt on the statements attributed to the screenwriters[8] or on the publication dates of the Short Story could support Plaintiff's claim that "the short story has been changed substantially" only if one were to indulge

---

[7] Review of the interview cited by Plaintiff suggests that while the germ of these "new" scenes may have been derived from or suggested by the Short Story, they were fleshed out and expanded upon in the Screenplay. See Motion, Exhibit J.

[8] Plaintiff seems to believe that undermining the credibility of statements attributed to Ossana and McMurtry somehow creates a genuine issue of material fact, even when those statement have nothing to do with the evidence upon which Defendants' motion relies. Of course, neither of these defendants is even a declarant in support of Defendants' motion.

1255015.4

the fantasy that the Short Story originally did not contain those scenes, that it was changed in 2005 and back-dated to 1997 (or 1999), and that a new version of the October 13, 1997, edition of *The New Yorker* somehow was created to replace the original. Of course, Plaintiff produces no copy of the lost "original" version that she imagines of *Brokeback Mountain,* nor even any evidence that it exists. This illustrates the logical leaps that would be required to overcome summary judgment based on this evidence.

## II. PLAINTIFF IS NOT ENTITLED TO A CONTINUANCE UNDER RULE 56(f).

In a last-ditch effort to avoid summary judgment, Plaintiff invokes Fed. R. Civ. P. 56(f) to request that the Court defer ruling on Defendants' Motion to allow her to conduct discovery. Plaintiff's cursory argument boils down to a claim that even though she cannot offer any evidence to dispute the facts set forth in Defendants' Motion, through some unspecified discovery she might "discover facts that create genuine disputes of the defendants' asserted undisputed facts." Opp. at 12.

To meet her burden of proving she is entitled to a continuance under Rule 56(f), plaintiff would have to identify ***specific facts or evidence*** that she contends create a triable issue and explain the reasons why she cannot produce those facts in opposition to the pending motion for summary judgment. Dunning v. Quander, 468 F. Supp. 2d 23, 27 n.5 (D.D.C. 2006); see also Byrd v. EPA, 174 F.3d 239, 248 n. 8 (D.C. Cir. 1999) ("Byrd has to show what facts he intended to discover that would create a triable issue and why he could not produce them in opposition to the motion."). She has done neither. Indeed, Plaintiff has not even attempted to outline the discovery she intends to take if the requested continuance is granted, how that hypothetical discovery could affect the outcome of this motion, or what evidence she intends to uncover through that discovery (or why she believes that such evidence exists). Messina v. Krakower, 439 F.3d 755, 762 (D.C. Cir. 2006) ("A party making a Rule 56(f) request must "state[ ] concretely why additional discovery is needed to oppose a motion for summary judgment."), quoting Strang v. United States Arms Control & Disarmament Agency, 864 F.2d 859, 861 (D.C.

Cir. 1989). And she never explains why if, as she claims, *Brokeback Mountain* was re-written and re-filmed in late 2005 using material from her book, see Opp. at 10, n.7, she has been unable to produce even a single shred of evidence to support her theory. There is not a single document or line of testimony demonstrating that that additional portions of the Motion Picture were filmed or substantive additions made to the Short Story or Screenplay in 2005.

Plaintiff's abstract hope that discovery might turn up some unspecified information that might be useful to her case is not sufficient to satisfy her burden under Rule 56(f). "It is not enough simply to assert… that 'something will turn up.'" Simmons Oil Corp. v. Tesoro Petrol. Corp., 86 F.3d 1138, 1144 (Fed. Cir. 1996). Likewise, this Circuit consistently has held that a party cannot seek a continuance or discovery under Rule 56(f) based solely upon unsupported and "conclusory assertion[s]" such as those set forth in Plaintiff's Opposition. Strang, 864 F.2d at 861; see also Carpenter v. Fed. Nat'l Mortgage Ass'n, 174 F.3d 231, 237 (D.C. Cir. 1999) (affirming decision to deny discovery relating to "conclusory assertion[s] without supporting facts."). It specifically is not sufficient for the Plaintiff to simply state that she needs to "test the allegations raised in the defendants' Answer to her Complaint or the self-serving Declarations attached to the defendants' motion for summary judgment." Strang, 864 F.2d at 861 ("Without some reason to question the veracity of affiants…whom Strang sought to depose in May 1986, Strang's desire to 'test and elaborate' affiants' testimony falls short; her plea is too vague to require the district court to defer or deny dispositive action."). These abstract and hypothetical purported "needs" for unspecified "discovery" are all that the Plaintiff offers in support of her request. It is far from enough to justify a continuance, which would only escalate the cost of this litigation.

## Conclusion

For the foregoing reasons, Defendants respectfully request that the Court grant their motion for summary judgment and deny Plaintiff's Request for a Continuance.

1255015.4

Date:  April 10, 2007					Submitted by:


						/s/ Steven J. Metalitz
						Steven J. Metalitz (D.C. Bar No. 944603)
						MITCHELL SILBERBERG & KNUPP, LLP
						2300 M Street, N.W., Suite 800
						Washington, D.C. 20037
						(202) 973-8109 (Telephone)
						(202) 973-8110 (Facsimile)

						Marc E. Mayer (*pro hac vice*)
						MITCHELL SILBERBERG & KNUPP LLP
						11377 West Olympic Boulevard
						Los Angeles, California 90064-1683
						(310) 312-2000 (Telephone)
						(310) 312-3100 (Facsimile)
						*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS has been served, via Federal Express and via the Court's electronic filing system, to the following address on April 10, 2007:

Janice Scott-Blanton
3578 Wharf Lane
Triangle, VA 22172

                                            /s/ Marc E. Mayer
                                            Marc E. Mayer (*pro hac vice*)
                                            MITCHELL SILBERBERG & KNUPP LLP
                                            11377 West Olympic Boulevard
                                            Los Angeles, California 90064-1683
                                            (310) 312-2000 (Telephone)
                                            (310) 312-3100 (Facsimile)
                                            *Attorneys for Defendants*