**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANICE SCOTT-BLANTON *pro se*, : | |
| : | |
| Plaintiff, : | Civil Action No.:  07-0098 (RMU) |
| : | |
| v. : | Document No.:  4 |
| : | |
| UNIVERSAL CITY STUDIOS : | |
| PRODUCTIONS LLLP *et al.*, : | |
| : | |
| Defendants. : | |

**MEMORANDUM OPINION**

**DENYING THE PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

**I. INTRODUCTION**

The plaintiff brings suit against the defendants, alleging that they failed to designate the plaintiff as the creative source for the film *Brokeback Mountain*. The plaintiff seeks to enjoin the defendants from further sale, distribution, display and marketing of the film and all derivative works. Because the defendants published and copyrighted the alleged infringing material prior to the publication of the plaintiff's novel, the plaintiff fails to demonstrate a substantial likelihood of success on the merits. Furthermore, because most, if not all, of the alleged harm occurred in the fourteen months between the release of the film and the request for a preliminary injunction, the plaintiff has not shown sufficient irreparable injury. For these reasons, and because the public interest is not served through an injunction, the court denies the plaintiff's motion for preliminary injunctive relief.

**II. BACKGROUND**

Annie Proulx wrote *Brokeback Mountain* as a short story in 1997, and The New Yorker

Magazine published her short story in October of that year. Compl. ¶ 28. Shortly after its publication, two screenwriters, Larry McMurtry and Diana Ossana, approached Proulx about adapting her short story into a screenplay. Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n to Summ. J."), Ex. H. Proulx agreed and the two screenwriters immediately began work on the adaptation. *Id.* McMurtry and Ossana assigned the rights to Columbia Pictures Industries, Inc. ("Columbia Pictures"), which copyrighted two *Brokeback Mountain* screenplays, one in 1998 and another in 2003. Declaration of Marc E. Mayer (D.D.C. Mar. 7, 2007) ("Mayer Decl."), Exs. J, K. According to Jeffrey Roth, the Senior Vice President of post production for Columbia Pictures on *Brokeback Mountain* the motion picture, the studio completed the final script on May 20, 2004, and completed filming all material scenes by August 5, 2004. Declaration of Jeffrey Roth (D.D.C. Mar. 7, 2007) ("Roth Decl.") ¶¶ 2-3.

In November 2004, the plaintiff wrote *My Husband is on the Downlow and I Know About It*, a novel tracking the life of a wife whose husband is having a homosexual affair. Compl. ¶ 19 & Ex. A. The plaintiff received a copyright for her novel, which was published on March 15, 2005. *Id.* ¶¶ 20, 22. On December 9, 2005, Columbia Pictures released *Brokeback Mountain* in theaters. *Id.* ¶ 25. Since that time, the movie has grossed over $250 million and received several awards. *Id.* ¶ 26. The plaintiff claims that she recognized similarities between *Brokeback Mountain* and her novel after watching the film for the first time on June 11, 2006. *Id.* ¶ 28.

On November 27, 2006, the plaintiff mailed a letter to NBC Universal, Inc. ("Universal") alleging copyright infringement based on these similarities. *Id.* ¶ 29 & Ex. L. On December 21, 2006, the plaintiff received a response from Universal denying the alleged infringement. *Id.* ¶ 30 & Ex. N. Although the plaintiff filed a complaint with this court on January 17, 2007, she waited until February 13, 2007 to move for a preliminary injunction. The court now turns to the

plaintiff's motion.

### III.  ANALYSIS

### A.  Legal Standard for Injunctive Relief

This court may issue interim injunctive relief only when the movant demonstrates:

(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.

Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995)); see also World Duty Free Americas, Inc. v. Summers, 94 F. Supp. 2d 61, 64 (D.D.C. 2000).  It is particularly important for the movant to demonstrate a substantial likelihood of success on the merits.  Cf. Benten v. Kessler, 505 U.S. 1084, 1085 (1992) (per curiam).  Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review."  Am. Bankers Ass'n v. Nat'l Credit Union Admin., 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation omitted).

The four factors should be balanced on a sliding scale, and a party can compensate for a lesser showing on one factor by making a very strong showing on another factor.  CSX Transp., Inc. v. Williams, 406 F.3d 667 (D.C. Cir. 2005) (citing CityFed Fin. Corp., 58 F.3d at 747).  "An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury."  CityFed Fin. Corp., 58 F.3d at 747.

Moreover, the other salient factor in the injunctive relief analysis is irreparable injury.  A

movant must "demonstrate at least 'some injury'" to warrant the granting of an injunction. Id. at 747 (quoting Population Inst. v. McPherson, 797 F.2d 1062, 1078 (D.C. Cir. 1986)). Indeed, if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors. Id.

Because interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). As the Supreme Court has said, "[i]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Id. Therefore, although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. In addition, any injunction that the court issues must be carefully circumscribed and "tailored to remedy the harm shown." Nat'l Treasury Employees Union v. Yeutter, 918 F.2d 968, 977 (D.C. Cir. 1990).

**B. The Plaintiff Fails to Demonstrate a Substantial Likelihood of Success on the Merits**

To prevail on a copyright cause of action, the plaintiff must prove both that she owns a valid copyright and that the defendants copied original or protectible elements of that work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Because the defendants do not contest the validity of the plaintiff's copyright, the court focuses on whether the plaintiff is able to show a substantial likelihood of success in proving that the defendants copied original or protectible elements of her novel. To meet this burden, the plaintiff must establish that the defendants had access to the copyrighted work and that the works are substantially similar. *Prunte v. Universal Music Group*, 484 F. Supp. 2d 32, 40-41 (D.D.C. 2007); *Whitehead v. Paramount Pictures Corp.*, 53 F. Supp. 2d 38, 46 (D.D.C. 1998).

The plaintiff is unable to meet this burden because the defendants' copyrighted works —

containing much, if not all, of the alleged infringing material — preceded the publication of the plaintiff's novel. In her motion for a preliminary injunction, the plaintiff argues that the defendants had access to the plaintiff's novel because one of the defendants, Larry McMurtry, owned three bookstores at the time the plaintiff's novel was published. Pl.'s Mot. Prelim. Inj. ("Pl.'s Mot.") at 5-6. Therefore, the plaintiff asserts that the defendants had access to the novel nine months before *Brokeback Mountain* the motion picture was released. *Id.* This assertion, while perhaps correct, is irrelevant to the operative legal question of whether the defendants' *previously* copyrighted works contain the content at issue. *See Feist Publ'ns*, 499 U.S. at 348 (stating that "[o]riginality is the *sine quo non* of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author").

It is undisputed that *Brokeback Mountain* was first published as a short story by Annie Proulx in 1997. Compl. ¶ 28; Defs.' Opp'n. to Pl.'s Mot. Prelim. Inj. ("Defs.' Opp'n to Prelim. Inj.") at 8. The short story was republished in *Close Range: Wyoming Stories* in 2003, and one of the defendants copyrighted a 113-page screenplay — adapted from the short story — in that same year. Mayer Decl., Exs. D, K. Furthermore, the plaintiff acknowledges that she did not create her novel until November 2004 and did not have it published until March 2005. Compl. ¶¶ 19, 23; Pl.'s Mot. for Prelim. Inj. ("Pl.'s Mot.") at 5.

Because the plaintiff failed to address whether the defendants possessed these previously copyrighted works in her motion for a preliminary injunction, the court draws from the plaintiff's opposition to summary judgment to assess her position on this point. In her opposition, she contests the authenticity of the publications of the short story submitted by the defendants whose publication dates preceded the March 15, 2005, publication date of the plaintiff's novel. Compl. ¶ 34; Pl.'s Opp'n to Summ. J. at 6-10. The bulk of the plaintiff's allegation rests on comments

5

made in an interview by two of the *Brokeback Mountain* screenwriters, who are named defendants.  Pl.'s Opp'n to Summ. J. at 7-10.  In the interview, these defendants discuss four "new" scenes that were "added" to the screenplay.  Pl.'s Opp'n to Summ. J., Ex. I.  The plaintiff asserts that because the two defendants described four scenes that were "new" to the screenplay, the court should infer that earlier publications of *Brokeback Mountain* containing these specific scenes are fraudulent.   Pl.'s Opp'n to Summ. J. at 7-10.  To support this claim, the plaintiff references statements made by Annie Proulx, acknowledging that changes were made to her short story to make it into a film.  Pl.'s Opp'n to Summ. J. at 7, Ex. H (available at http://www.kcrw.com/etc/programs/bw/bw060119annie_proulx).[1]  Even assuming for the moment that the interviews are admissible evidence, without more, the plaintiff's contention that the defendant submitted fraudulent copies of the short story to the court is unpersuasive.

Furthermore, the plaintiff's chart comparing her novel and various versions of *Brokeback Mountain* — including *Brokeback Mountain* the motion picture, *Brokeback Mountain* the screenplay, and *Brokeback Mountain* the short story (2005) — actually undermines the plaintiff's likelihood of success.  Compl. ¶ 40.  Indeed, after careful review, the court notes that the short story, published in 2005, is virtually identical to works published before the plaintiff's novel.  *Compare* ANNIE PROULX, *Brokeback Mountain*, *in* CLOSE RANGE: WYOMING STORIES 255 (Scribner 2003) *and* Annie Proulx, *Brokeback Mountain*, THE NEW YORKER, Oct. 13, 1997, at 74 *with* ANNIE PROUXL, BROKEBACK MOUNTAIN (Scribner 2005) (essentially identical).

Given the dearth of evidence supporting the plaintiff's allegation that there exists infringing content different from the content in the defendants' prior copyrighted works, the

---

[1]  The changes Proulx refers to are changes she made to the style of dialogue in the screenplay.  Pl.'s Opp'n to Summ. J., Ex. H.  Proulx goes on to say that the characters in the movie "roared up off the page."  *Id.*

plaintiff has failed to prove a substantial likelihood of success on the merits. *See Glover v. Austin*, 447 F. Supp. 2d 357, 361 (S.D.N.Y. 2006); *see also McCall v. Johnson Publ'g Co.*, 680 F. Supp. 46, 48 (D.D.C. 1988).

### C. The Plaintiff has Made an Insufficient Showing of Irreparable Harm

Proceeding with the preliminary injunction framework, the court must determine whether the plaintiff will suffer irreparable harm if the injunction is not granted. A plaintiff who holds a copyright is entitled to a presumption of irreparable harm in a copyright claim provided that the plaintiff has established a substantial likelihood of success on the merits. *See Random House, Inc. v. Rosetta Books LLC*, 283 F.3d 490, 491 (2d Cir. 2002) (per curiam) (equating the evidence necessary in a prima facie case to that needed to prove a likelihood of success on the merits); *see also Cerveceria Modelo, S.A. de C.V. v. Cuvee*, 227 F. Supp. 2d 39, 40 (D.D.C. 2002); *WPOW, Inc. v. MRLJ Enters.*, 584 F. Supp. 132 (D.D.C. 1984). Here, because the plaintiff has not demonstrated a substantial likelihood of success on the merits, she is not entitled to a presumption of irreparable injury.

The plaintiff argues that she is suffering irreparable harm because she "is being [] egregiously deprived of recognition for her copyrighted work" and because "the ongoing distribution and showing of the motion picture and its derivatives continue to diminish any hope or possibility for the plaintiff to rightfully benefit." Pl.'s Mot. at 16. The plaintiff's arguments fail for at least two reasons. First, injunctive relief is an inappropriate remedy given the length of time *Brokeback Mountain* the motion picture has been in the public domain. In *Berlent v. Focus Features, LLC*, No. 06 Civ. 2834, 2006 WL 1594478 (S.D.N.Y. June 8, 2006), the court was presented with a similar copyright infringement claim regarding a song on the *Brokeback Mountain* soundtrack. The court determined that the confusion in the marketplace over who had

7

composed the song had already occurred because the plaintiff brought the claim five months after the soundtrack was released and four months after the movie opened. *Id.* at *2. Consequently, the court found that the plaintiff could not establish irreparable harm because issuing a preliminary injunction would not "remedy that confusion or lessen that damage." *Id.* Here, the plaintiff's claim is even more attenuated because the plaintiff waited fourteen months after *Brokeback Mountain* opened in movie theaters to request injunctive relief. As in *Berlent*, confusion in the marketplace would have already occurred, and injunctive relief would fail to cure any irreparable harm the plaintiff has already suffered. *Marcy Playground, Inc. v. Capitol Records, Inc.*, 6 F. Supp. 2d 277, 282 (S.D.N.Y. 1998) (refusing to grant a preliminary injunction for harm that had already occurred because to do so "would be very much like locking the barn door after the horse is gone").

      Second, the plaintiff"s delay in bringing the motion weighs against a finding of irreparable harm. *Markowitz Jewelry Co., Inc. v. Chapal/Zenray, Inc.*, 988 F. Supp. 404, 46 (S.D.N.Y. 1997). The plaintiff acknowledges that the defendants released *Brokeback Mountain* the motion picture on December 9, 2005. Compl. ¶ 26. Despite its early notoriety and alleged similarities to the plaintiff's "original . . . first of its kind" literary work, the plaintiff waited over six months to see the movie and an additional five and half months to write a letter to one of the defendants regarding the alleged infringement. Compl. ¶¶ 21, 28-29. It was not until January 16, 2007, almost one month after receiving a response from the defendants, that the plaintiff filed her complaint. She waited an additional month to move for a preliminary injunction. Thus, over fourteen months have elapsed between the defendants' release of the motion picture and the plaintiff's motion for a preliminary injunction; the plaintiff has offered no explanation for this undue delay. Accordingly, the court does not consider the plaintiff's alleged harm to be of "such

*imminence* that there is a 'clear and present' need for equitable relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting *Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (stating that "[d]elay in seeking enforcement . . . tends to indicate at least a reduced need for such drastic, speedy action").

### D. The Balance of Interests Weighs in Favor of Denying the Preliminary Injunction

The plaintiff insists that the defendants would not suffer significant harm if the court granted injunctive relief because the defendants have already received substantial monetary gain and professional accolades. Pl.'s Mot. at 16-17. This, however, completely ignores the practical impact of a sweeping injunction preventing the defendants from further sale, distribution, display and marketing of *Brokeback Mountain* and all its derivative works. It is the court's determination, based on a sworn affidavit submitted by the defendants, that the defendants would suffer significant harm if an injunction were granted due to the time and the money invested to distribute *Brokeback Mountain* DVDs and the commercial arrangements to broadcast *Brokeback Mountain* through a variety of mediums. Defs.' Opp'n to Prelim. Inj. at 13-14; Declaration of Richard Longwell (D.D.C. Mar. 7, 2007) ¶¶ 2-5 (stating that "the return on investment in the Film largely is dependent on . . . DVDs and cable television . . . [of which] hundreds of thousands of copies of the *Brokeback Mountain* DVD have been sold").[2]

Finally, while it is in the public interest to protect copyrights by appropriately attributing authorship of copyrighted materials, the plaintiff seeks only to enjoin the defendants from further

---

[2] Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, the plaintiff shall provide security "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Here, the plaintiff stated that "due to her limited means" she may only be able to post a "nominal bond." Pl.'s Mot. at 17. Thus, the defendant would be in even greater danger of suffering significant harm if the court granted the plaintiff's request for injunctive relief.

unjust enrichment.  This remedy does not serve the public interest, and it would deprive the public of access to an award-winning film.  Accordingly, the public interest weighs in favor of denying the injunction.

## IV.  CONCLUSION

For the foregoing reasons, the court denies the plaintiff's motion for a preliminary injunction.  An order consistent with the Memorandum Opinion is filed separately and contemporaneously this 19th day of July, 2007.

RICARDO M. URBINA<br>United States District Judge