## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ | ) | |
| **JANICE SCOTT-BLANTON,** *pro se* | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. **1.07cv00098 (RMU)** |
| | ) | |
| **UNIVERSAL CITY STUDIOS** | ) | |
| **PRODUCTIONS LLLP,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## REPLY BRIEF OF DEFENDANTS RE: ORDER DATED AUGUST 26, 2007 REGARDING MOTION FOR SUMMARY JUDGMENT

The Supplemental Memorandum of Plaintiff Janice Scott-Blanton ("Plaintiff") fails to offer any new, much less compelling, argument for why discovery is necessary in this case. In fact, Plaintiff and Defendants agree on the critical legal issues, including that: (1) the Federal Rules of Civil Procedure do not require that Plaintiff be permitted to conduct discovery before granting Defendants' Motion for Summary Judgment; (2) it is Plaintiff's burden, pursuant to Rule 56(f), to prove that she is entitled to discovery prior to a ruling on Defendants' motion; and (3) in order to meet her burden under Rule 56(f), Plaintiff is required to (a) identify, with particularity, the facts to be discovered that would create a triable issue of fact, and (b) explain the reasons why the Plaintiff cannot produce those facts in opposition to the motion. Compare Supplemental Brief of Defendants at 1-4 with Plaintiff's Supplemental Memorandum ("Supplemental Memo.") at 1-3; see also Carpenter v. Fed. Nat'l Mortgage Ass'n, 174 F.3d 231, 237 (D.C. Cir. 1996).

Plaintiff simply has not met this burden.  To the contrary, review of her Supplemental Memorandum confirms (again) that Plaintiff's entire opposition to Defendants' Motion for Summary Judgment (and her request for discovery under Rule 56(f)) is premised on speculation and innuendo.  This alone refutes her contention that "[t]his is an ordinary case" like <u>Americable Int'l, Inc. v. Dept. of Navy</u>, 129 F.3d 1271, 1274 (D.C. Cir. 1997), and makes this case far more analogous to those cited in Defendants' Supplemental Brief, in which summary judgment was granted without any discovery.  <u>See</u>, <u>e.g.</u>, <u>Stewart v. Evans</u>, 351 F.2d 1239, 1244-46 (D.C. Cir. 2003); <u>Carpenter</u>, 174 F.3d at 237 (D.C. Cir. 1999).

Still unable to produce any tangible evidence to dispute any of the facts set forth in Defendants' Motion (or even a tangible basis to assume that any such evidence exists), Plaintiff re-hashes in her Supplemental Memorandum the same strained arguments she made in her Opposition to Defendants' Motion for Summary Judgment.  Most notably, Plaintiff again confirms that her request for discovery is almost entirely based upon her incredible theory that Defendants fabricated the evidence in the record (or concealed evidence that is not in the record) in order to cover up the existence of "a basic, skeletal version of a short story under some title or another [that] was written in 1997 by defendant Proulx."  Supplemental Memo. at 4.  Plaintiff's insistence that this unknown version of *Brokeback Mountain* must exist (and her insinuation that her inability to locate it is the result of a worldwide cover-up by Defendants) is  precisely the type of unabashed speculation that cannot support a request under Rule 56(f).  <u>See</u> <u>Strang v. United States Arms Control and Disarmament Agency</u>, 864 F.2d 859, 862 (D.C. Cir. 1989).

 In any event, Plaintiff's conspiracy theory falls of its own weight, because she now concedes that the short story contained in the October 13, 1997 issue of *The New Yorker* magazine submitted into the record by Defendants  (Mayer Declaration, Exhibit A) is identical to the copy of the story in that issue that resides on the shelves of the Library of Congress.

2

Supplemental Memo. at 5 n. 4.[1]  Since, as this court has already found, all of the copies in the record – from 1997 through 2005 – are virtually identical (Memorandum Opinion, July 19, 2007 (Docket No. 36) at 6), nothing in them could possibly have been copied from plaintiff's book. See <u>Christian v. Mattel, Inc.</u>, 286 F.3d 1118, 1128 (9th Cir. 2002) ("By simple logic, it is impossible to copy something that does not exist.").[2]

The hodgepodge of remaining arguments and purported "evidence" offered by Plaintiff likewise is of little assistance to her.  Plaintiff again makes much of hearsay interviews concerning the length or content of the *Brokeback Mountain* screenplay and shooting script.  But even if these interviews were admissible, they prove, at most, only that the screenplay was revised over the years – not that any substantive revisions to the shooting script were made after her book was published in 2005.  All the evidence in the record shows that would have been impossible, since the motion picture was completed before that time.

Plaintiff argues that the copyright registration for the motion picture lists the date of creation as 2005.  Of course this is entirely consistent with the testimony of Jeffrey Roth that principal production of the motion picture was completed in 2004, and that it was in its final form by the date in 2005 that the Plaintiff's book was published.  Roth Declaration at 1-4.

Grasping at another straw,  Plaintiff now points to unconfirmed, gossip-column reports about the date on which the child of Michelle Williams (one of the actors in *Brokeback Mountain*) was conceived, an event that assertedly took place "during filming" of *Brokeback*

---

[1] Plaintiff apparently suggests that Defendants somehow fabricated the version of *The New Yorker* that the Library of Congress holds.  This ridiculous suggestion does not help her case, because the Library of Congress is not the only institution with back issues of *The New Yorker* in its collection.  Even if the Court indulged the Plaintiff's belief that Defendants fabricated both the copy in the record and the copy in the Library of Congress, she could still have obtained the "basic, skeletal" version – if it existed – from one of the public libraries in the Washington, DC area.  Her unexplained failure to produce such a copy, which would require no discovery, dooms her request under Rule 56(f).

[2] Plaintiff asserts that Defendants "have not denied having access to the plaintiff's work after it was published in March 2005."  In fact, Defendants have denied such access.  <u>See</u>, <u>e.g.</u>, Defendants' Answer to Amended Complaint at ¶ 28.

*Mountain.* Supplemental Memo. at 8. These multiple layers of hearsay fall far short of meeting Plaintiff's burden of establishing a need for discovery. Moreover, even under Plaintiff's theory, and calculating from the birth date she supplies, it is clear that Ms. Williams' child was conceived well before Plaintiff published her novel, even if filming of *Brokeback Mountain* had not been completed when the child was conceived.

None of the cases relied on by the Plaintiff (Supplemental Memo. at 2-3), come close to requiring the Court to allow discovery under these circumstances. Just as in Americable, in all of the cases cited by Plaintiff there were discrete, tangible factual issues for which discovery was both necessary and appropriate. See, e.g., Black v. National Football League Player's Ass'n, 87 F. Supp. 2d 1, 3-4 (D.D.C. 2000) (discovery needed in discrimination case to compare contractors to determine whether they were similarly situated in all material respects); Hellstrom v. U.S. Dept. of Veterans Affairs, 201 F.3d 94, 97-8 (2d Cir. 2000) (discovery needed to determine whether employer demoted plaintiff because of protected speech on a matter of public concern for purposes of First Amendment claim); Mid Atlantic Telecom, Inc. v. Long Distance Services, Inc., 18 F. 3d 260, 263 (4th Cir. 1994) (discovery needed to determine whether defendant violated RICO statute because the record did not show whether defendant targeted plaintiff to obtain unfair competitive advantage); WSB-TV v. Lee, 842 F.2d 1266, 1269-70 (11th Cir. 1988) (discovery needed to resolve "conflicting inferences" that could "reasonably [] be drawn from all of the affidavits on file").[3] Not one of these cases involved situations in which the plaintiff supported a discovery request with only rank speculation, as Plaintiff has done here.

---

[3]  In fact, some cases relied on by Plaintiff have been cited favorably by courts in this District in decisions in which summary judgment was granted prior to discovery. See Raymond v. U.S. Capitol Police Bd., 157 F. Supp. 2d 50, 55 (D.D.C. 2001) (granting summary judgment prior to discovery despite language in Patton v. General Signal Corp., 984 F. Supp. 666, 669 (W.D.N.Y. 1997) indicating that some "courts reserve pre-discovery summary judgment for exceptional circumstances"); Rumore v. Belk, 907 F. Supp. 487, (D.D.C. 1995), aff'd, 107 F.3d 923 (D.C. Cir. 1996) (citing Committee for the First Amendment v. Campbell, 962 F.2d 1517, 1523 (10th Cir. 1992) for the rule that courts should not allow plaintiffs to use Rule 56(f) to conduct "fishing expedition[s]").

If Plaintiff's position were accepted, then all that a plaintiff would need to do to avoid summary judgment (and engage a defendant in costly and burdensome discovery) is to claim that all of the existing evidence is fabricated, and articulate some alternative set of possible facts (no matter how bizarre or fanciful) which might conceivably emerge from unspecified discovery efforts. That is not the law. See, e.g., Carpenter, 174 F.3d at 237 (allegations that co-workers "fabricated" criticisms of plaintiff's work were "plainly conclusory assertion[s] without supporting facts"); Stewart, 351 F.2d at 1244-46 (court could not discern how "discovery would shed any different light on the undisputed facts central to [the] case"); cf. Glover v. Austin, 447 F. Supp. 2d 357, 361 (S.D.N.Y. 2006) ("Plaintiffs, to avoid summary judgment, may not rely simply on conclusory allegations or speculation…but instead must offer evidence to show that [their] version of the events is not wholly fanciful.").

Plaintiff's claims are frivolous. There are no triable issues of material fact here, and no reason to think that any will be uncovered by discovery. Allowing discovery would only further drive up the costs of this groundless litigation. Accordingly, Defendants respectfully request that the Court deny Plaintiff's request for discovery under Rule 56(f) and grant Defendants' Motion for Summary Judgment.

Date: October 8, 2007                    Submitted by:


                                         /s/ Steven J. Metalitz
                                         Steven J. Metalitz (D.C. Bar No. 944603)
                                         J. Matthew Williams (D.C. Bar No. 501860)
                                         MITCHELL SILBERBERG & KNUPP LLP
                                         1818 N Street, N.W., 8th Floor
                                         Washington, D.C. 20036
                                         (202) 355-7902 (Telephone)
                                         (202) 355-7892 (Facsimile)

Marc E. Mayer (*pro hac vice*)
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
(310) 312-2000 (Telephone)
(310) 312-3100 (Facsimile)
*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing REPLY BRIEF OF DEFENDANTS RE: ORDER DATED AUGUST 26, 2007 REGARDING MOTION FOR SUMMARY JUDGMENT has been served, via Federal Express and via the Court's electronic filing system, to the following address on October 8, 2007:

Janice Scott-Blanton
3578 Wharf Lane
Triangle, VA 22172

<u>/s/ Steven J. Metalitz</u>
Steven J. Metalitz (D.C. Bar No. 944603)
MITCHELL SILBERBERG & KNUPP LLP
1818 N Street, N.W., 8th Floor
Washington, D.C. 20036
(202) 355-7902 (Telephone)
(202) 355-7892 (Facsimile)
*Attorney for Defendants*