**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
)
**JANICE SCOTT-BLANTON,** *pro se*              )
)
          Plaintiff,              )
)
v.                                                                    )        Civil Case No. **1.07cv00098 (RMU)**
)
**UNIVERSAL CITY STUDIOS**              )
**PRODUCTIONS LLLP,** *et al.*,              )
)
          Defendants.              )
_____)

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS

### Introduction and Summary

In the Second Memorandum of Plaintiff Janice Scott-Blanton in Opposition to Defendants' Motion for Summary Judgment, Plaintiff once again fails to offer any evidence that could overcome the single fact that mandates summary judgment: All of the *Brokeback Mountain* works at issue were created by Defendants prior to the publication of "My Husband is on the Down Low and I Know About It" ("Down Low") by the Plaintiff.[1]  This basic fact completely negates the possibility of copying and thereby disposes of her claims.  See Glover v. Austin, 447 F. Supp. 2d 357, 361-62 (S.D.N.Y. 2006); Christian v. Mattel, Inc., 286 F.3d 1118, 1128 (9th Cir. 2002).

_____

[1]  In her "Separate Statement of Genuine Issues," Plaintiff has not disputed any of the specific material facts set forth in Defendants' Separate Statement of Material Facts Not In Dispute. The Court may assume that any uncontroverted facts contained in Defendants' Separate Statement are admitted.  LCvR 56.1.

As in her earlier papers, Plaintiff almost entirely ignores the basic (and straightforward) evidence presented by Defendants. Instead, she once again seeks to divert the Court's attention from the issues presented in Defendants' motion by focusing exclusively on minutiae and irrelevancies, such as purported "new scenes" that she claims were added to the Motion Picture, the dates of various copyright registrations, or the length of prior iterations of the Screenplay. Not one of her arguments is sufficient to refute Defendants' evidence or even create an issue of disputed fact. Indeed, the majority of Plaintiff's Opposition merely re-hashes the very same arguments that Plaintiff made in her request for discovery under Rule 56(f), and which this Court expressly rejected in its November 15, 2007, Order. (Docket No. 52). And the few new strands of "evidence" she offers this time around, such as e-mail correspondence about the unidentified "friend" of an eBay seller, Internet reports about the weather in Calgary, and the title of a song that was contained in the Motion Picture, only confirm the complete lack of any tangible evidence to support her claims.

This Court already has found that Plaintiff's unsupported speculation and innuendo that Defendants re-wrote and "deliberately withheld" the "original" Short Story *Brokeback Mountain* is "so implausible as to lie outside the realm of reason." November 15 Order at 8. This cannot defeat summary judgment. See Exxon Corp. v. Federal Trade Comm'n, 663 F.2d 120, 126-27 (D.C. Cir. 1980) ("It is well-settled that [c]onclusory allegations unsupported by factual data will not create a triable issue of fact."); Glover, 447 F. Supp. 2d at 361 ("Plaintiffs, to avoid summary judgment, may not rely simply on conclusory allegations or speculation ... but instead must offer evidence to show that [their] version of the events is not wholly fanciful."). The same is true with respect to Plaintiff's blanket attacks on the veracity of Defendants' witnesses or the authenticity of documents. Although she has had nearly a year (and many opportunities) to do so, Plaintiff simply cannot provide any facts that support any of her elaborate conspiracy theories, or that refute any of the testimony presented by Defendants. Summary judgment should be granted.

I.    **PLAINTIFF'S PURPORTED "EVIDENCE" HAS NO BEARING ON, AND DOES NOT CREATE AN ISSUE OF DISPUTED FACT CONCERNING THE DATE OF CREATION OF THE SHORT STORY, SCREENPLAY, OR MOTION PICTURE.**

The evidence submitted with Defendants' motion (which includes copies of the works at issue, production calendars and reports, copyright registrations, and sworn witness testimony) unequivocally proves each of the following facts:

●    The Short Story *Brokeback Mountain* originally was published in the October 13, 1997, issue of *The New Yorker*.  See Declaration of Marc E. Mayer ("Mayer Decl."), Ex. A; Complaint, ¶ 34.  It was republished with very minor changes in *1999* as part of "Close Range: Wyoming Stories" ("Close Range"), and every subsequent publication in 2005 and 2006 has been of the identical text.  Declaration of Nan Graham ("Graham Decl."), ¶¶ 3-4 & Exs. 1-3.

●    The *Brokeback Mountain* Screenplay was created in 1998, registered with the United States Copyright Office in 2000, and in its final edited form by May 2004.  Declaration of Jeffrey Roth ("Roth Decl."), ¶ 2; Mayer Decl., Exs. J & K.

●    Principal photography on the Motion Picture *Brokeback Mountain* was completed by August 2004, the Motion Picture was in post-production throughout the remainder of 2004 and early 2005, and the final print was completed in March 2005.  Roth Decl., ¶¶ 3-5.

●    "Down Low" first was published in March 2005.  Amended Complaint, ¶ 23. That is eight years after the Short Story was published, seven years after the Screenplay was first completed, seven months after filming of the Motion Picture ended, and two months after all editing of the film was completed.

Rather than directly address any of this evidence, Plaintiff's entire Opposition devolves into blanket accusations that Defendants are attempting to "hoodwink" the Court and "create a morass of conflicting copyright and creation dates." (Opp. at 21).[2]  The foundation for these

---

[2] In fact, the basic timeline of the creation of the Motion Picture (and thus of the Screenplay) was communicated to Plaintiff months before she even filed this lawsuit, in the letter she attached to her complaint as Exhibit N.

reckless charges consist of a hodgepodge of various documents, including copyright registrations, interviews, e-mails, and weather reports. But none of this "evidence" contradicts in any way the specific and still uncontested evidence that each of the *Brokeback Mountain* works was created prior to "Down Low," and thus that there was neither access by Defendants nor copying. See Glover, 447 F. Supp. 2d at 362-63 (Plaintiff cannot avoid summary judgment by attempting to cast doubt on evidence of prior creation through "conspiracy theories concerning deception and coverup.") If anything, Plaintiff's evidence actually confirms the ***absence*** of disputed factual issues and, in fact, generally confirms the accuracy of Defendants' timeline.

The Motion Picture. Plaintiff's attempt to refute the production and post-production timeline of the Motion Picture (as set forth in the declaration of Jeffrey Roth) largely is based on her claim that because the copyright registration for the Motion Picture reflects it was "***completed***" and "first published" in 2005 (see Scott-Blanton Decl., Ex. H), the Motion Picture could not have been ***created*** prior to the publication of her novel in March 2005. The argument misses the point. The Motion Picture was filmed in mid-2004, edited in late 2004 and early 2005, and was substantively complete (with the exception of purely technical edits) by March 2005. Roth Decl., ¶¶ 3-5. In other words, all of the elements of the Motion Picture that Plaintiff ***claims are infringing*** (i.e., the scenes, dialog, and characters) were created prior to the publication of, and thus could not have been copied from, "Down Low." The copyright registration, which is *prima facie* evidence that the Motion Picture was "completed" in 2005, does not create any issue of disputed fact on this question.

The few remaining evidentiary threads that Plaintiff attempts to weave together to support her alternative timeline are equally unpersuasive (and in fact serve to illustrate the infirmity of her case). Plaintiff once again draws inferences from hearsay reports about the date on which the child of Michelle Williams (one of the actors in Brokeback Mountain) was conceived (Opp. at 7). But the Court has already concluded that "even jumping through the series of inferential hoops the plaintiff's conclusion requires, this argument does not provide a reasonable basis for discovery because the plaintiff's novel was not published until March 15,

2005." November 15 Order, at 7 n.5. For precisely the same reason, this argument does not create any material factual dispute and cannot defeat summary judgment.

Also unavailing is the e-mail chain Plaintiff offers from "Becky Wai" at bfun88@gmail.com, claiming that an (unidentified) "friend of mind[sic] who worked on the set during filming last year gave me a copy [of the script]," which Plaintiff claims she later acquired. Scott-Blanton Decl., para. 8 and Ex. I. Even if this evidence, which depends on multiple links of hearsay, were admissible (it is not), it is worthless, because Ms. Wai has no personal knowledge of the filming of the Motion Picture, and Plaintiff has offered no evidence as to whom Ms. Wai's purported "friend" is, when that friend "worked on the set," what "set" he or she worked on, or what even was meant by Ms. Wai by her vague and offhand expression "last year."

Finally, Plaintiff offers Internet weather reports for Calgary, Alberta, Canada, arguing that these reports are inconsistent with Diana Ossana's retelling of the trials and tribulations of the film (noting that she endured "rain, snow, sleet, and hail"). The argument is riddled with logical and evidentiary problems. To begin with, the Motion Picture was not filmed *in* Calgary, but rather, "in *and around*" Calgary) (Roth Decl., ¶ 3).[3]  Plaintiff chooses to credit – and to interpret literally – Ms. Ossana's meteorological observations, but to brand as a lie the statement on the very next page (published long before this litigation began) that "shooting ended in August 2004." Graham Decl., Ex. 3 [Ossana essay], p. 150. Ossana's essay does not purport to be (and Ossana has never claimed that it is) a verifiable statement of 2004 weather conditions. In sum, the weather reports prove nothing, and Plaintiff's attempt to extrapolate filming dates from them is pure guesswork that cannot substitute for (far less contradict) sworn testimony.

<u>Screenplay</u>. The undisputed evidence that the Motion Picture was filmed in 2004 alone is sufficient to foreclose any argument that the Screenplay infringes *Down Low*, because, of course, the Screenplay necessarily was in its final form when the Motion Picture was filmed. In any

---

[3] As anyone who has seen the Motion Picture knows, much of it was filmed in rural locales, or what Osanna refers to, in the same sentence on which Plaintiff seizes, as "the remotest of remote locations." Graham Decl., Ex. 3 [Ossana essay], p. 149.

event, Plaintiff offers nothing to contradict the testimony and documentary evidence that the final version of the screenplay (i.e., the shooting script) used to film the Motion Picture was completed in 2004. Her arguments concerning the date of copyright registrations or the length of prior drafts of the Screenplay are red herrings. Even if, as Plaintiff contends, the length or content of the Screenplay evolved over time or the version of the Screenplay that Plaintiff concedes was registered in 2000 (Opp. at 14) was different from the version registered in 2004, there is no evidence that any version of the Screenplay was altered or amended after *Down Low* was published in March 2005. To the contrary, the purported page number "discrepancy" noted by Plaintiff indicates only that the Screenplay was revised between 2000 and ***2004 -- prior to*** the publication of *Down Low*.[4]

Short Story. As the Court has already noted, "plaintiff acknowledges that the copy of *The New Yorker* submitted by the defendants is identical to the copy on file with the Library of Congress and presents no evidence that the remaining publications are fraudulent." Nov. 15 Order at 9, n.6. This admission is dispositive.[5]

Nevertheless, still unwilling to accept the evidence in front of her, as confirmed in this Court's prior ruling, Plaintiff clings to her belief that there exists an "original" version of *Brokeback Mountain*; that the versions of the Short Story held in the collections of the Library of Congress, available in bookstores and libraries across the country, and attached to Defendants' Motion are newly created and backdated; and that Defendants have attempted to "mislead" the Court by withholding or concealing this "original" version. After nearly a year of litigation,

---

[4] Plaintiff argues that because the 2004 copyright registration describes the Screenplay as an "original" screenplay, it must be derived from the hypothetical "original" 1997 Short Story that Plaintiff claims to have been concealed by Defendants. Of course, in this context "original" refers only to the fact that the Screenplay is the creative work of its authors – not that it is derived from any particular version of the Short Story (far less the imaginary one that Plaintiff believes to exist).

[5] Plaintiff's lengthy argument that two versions of "Close Range" were published – one with 9 stories and one with 11 stories – is irrelevant. Even if true, there is no dispute that the version of *Brokeback Mountain* contained in both version of "Close Range" is exactly the same.

Plaintiff still cannot produce a copy of the lost "original" version that she imagines to exist, nor even any evidence that it might exist. Instead, her argument continues to be this: because in media interviews Ossana, McMurtry, Proulx, or Lee have characterized certain scenes in the Motion Picture (including, she now claims, a "motel scene"[6] and a "tent scene") as departures from the Short Story, then to the extent any elements of those scenes are present in (or germinated from) the version of the Short Story in the record, that version is a fraud. This Court specifically rejected this argument, finding that "[t]he plaintiff's reliance on these interviews…does not rise above mere speculation" and that the series of events posited by Plaintiff is "so implausible as to lie outside the realm of reason." November 15 Order at 8. If anything, Plaintiff's detailed exegesis of the Short Story and Screenplay proves exactly what Defendants have argued: the main elements of the Motion Picture were present in the original 1997 Short Story and thus could **not** have been copied from *Down Low*.

Perhaps because the Court has squarely rejected her unsupported theory, Plaintiff offers two new arguments to seek to revive it. Both can be easily disposed of.

***First***, Plaintiff argues that the version of *Brokeback Mountain* in the record is not the "original" version because it references a song entitled "Water Walking Jesus," which was composed by James McMurtry for (and performed in) the motion picture. But Plaintiff's evidence – including her observation that Annie Proulx is credited as a co-writer of "Water Walking Jesus" – actually proves the ***contrary***: namely, that Proulx conceived the ***title*** of the song in her original Short Story, and a fully realized musical composition using that title was later created for the motion picture.

---

[6] In fact the "Cinemalogue" quote from Larry McMurtry that Plaintiff relies upon in support of her "splitting of the motel scene" argument does not support her claim. Rather, in that interview, McMurtry discusses changes between ***drafts of his Screenplay*** – not between the Short Story and the Screenplay. See Scott-Blanton Decl., Ex. E ("In the original script, we had the dialogue…occurring all in one scene: in the motel. Ang wanted to divide that dialogue into two scenes.")

**Second**, Plaintiff again confuses the relevance and meaning of the copyright registrations for the Short Story. The registrations attached to Plaintiff's Opposition are consistent with Defendants' timeline, and confirm the following: (1) the October 13, 1997, issue of *The New Yorker* (containing *Brokeback Mountain*) was registered with the Copyright Office (with the deposit copy that Plaintiff apparently has reviewed) on October 14, 1997 (Scott-Blanton Decl., Ex. A), and (2) on April 8, 2004 (nearly a year before Plaintiff's work was published), Dead Line, Ltd. separately registered the Short Story *Brokeback Mountain*, specifically noting in the application that the work previously had been published in *The New Yorker* on October 13, 1997 and was first published on that date (Scott-Blanton Decl., Ex. G). In any event, neither of the registrations support any conclusion other than that the Short Story first was published in 1997 and was re-published in substantively identical form thereafter.[7]

## II.     PLAINTIFF'S RELATED CLAIMS FAIL ALONG WITH HER COPYRIGHT CLAIMS, AND, IN ANY EVENT, THEY ARE LEGALLY MERITLESS.

Plaintiff does not contest that her related claims (1) under state law unfair competition or misappropriation (under the laws of all 50 states), (2) for foreign distribution of *Brokeback Mountain*, (3) under the Lanham Act, and (4) under the Sherman Act, are premised on the very same conduct that gives rise to (and thus are purely derivative of) her claims under the Copyright Act. Because, as set forth above and in Defendants' Motion, Plaintiff's copyright claims fail, her related, ancillary claims also must fail. Whitehead v. Time-Warner, Inc., Case No. 98-0257, 2000 U.S. Dist. LEXIS 20765, *5; Copy. L. Rep. (CCH) ¶28,290 (D.D.C. June 14, 2000) (dismissing eight related claims premised on same alleged infringement of plaintiff's copyright: "Because plaintiff has failed to establish copyright infringement, however, he fails to state a claim that would support any of these eight derivative claims.").

---

[7] Plaintiffs' argument that the copyright registrations are inconsistent with the copyright **notice** contained in "Close Range" (Opp. at 9) is wrong. The notice (© 1997) consistently and correctly reflects the year of "first publication of the work." 17 U.S.C. § 401(b).

Plaintiff also does not address, and thereby concedes, Defendants' argument that her Lanham Act and Sherman Act claims fail to state a claim under either statute, including because (1) <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23, 34-37 (2003), precludes the assertion of "passing off" claims arising purely from the alleged infringement of a copyright, and (2) Plaintiff has failed to allege any of the elements of a claim under the Sherman Act, including that Defendants had dominant market power in a relevant market, that they engaged in anticompetitive conduct, or that such conduct caused antitrust injury (e.g., a decrease in competition in the relevant market). <u>See</u> <u>Eastman Kodak Co. v. Image Technical Servs. Inc.</u>, 504 U.S. 451, 481-82 (1992). With respect to the two issues that Plaintiff does address -- the inapplicability of the Copyright Act to her claims for foreign infringement and preemption of state law claims under Section 301 of the Copyright Act – her arguments misconstrue the law.

*First*, Plaintiff's suggestion that the Copyright Act applies to conduct that takes place in foreign jurisdictions if a work is first created in the United States or a defendant is "unjustly enriched" by the foreign conduct is wrong. <u>Subafilms, Ltd. v. MGM-Pathe Communications Co.</u>, 24 F.3d 1088, 1095 (9th Cir. 1994) (Copyright Act did not apply to foreign distribution of plaintiff's work, even though the defendant "authorized" the conduct within the United States); <u>Armstrong v. Virgin Records, Ltd.</u>, 91 F. Supp. 2d 628, 635 (S.D.N.Y. 2000) ("United States copyright law cannot be applied to wholly foreign acts of infringement merely because foreign infringement will have adverse effects within the United States."). Plaintiff's reliance on <u>Environmental Defense Fund, Inc. v. Massey</u>, 986 F.2d 528 (D.C. Cir. 1993), is wholly misplaced. <u>Massey</u> has nothing to do with the Copyright Act, but only the extraterritoriality of the National Environmental Policy Act ("NEPA").

*Second*, Plaintiff argues that even though her state law claims arise out of the ***exact same*** conduct that gives rise to her copyright claims, they are not preempted by the Copyright Act because she has alleged that Defendants' infringement resulted in "market confusion." That also

is wrong.[8]  See Patsy Aiken Designs, Inc. v. Baby Togs, Inc., 701 F. Supp. 108, 111 (E.D.N.C. 1988) ("Plaintiff's allegation that defendants' copying caused consumer confusion is not sufficient to support a state law claim for copying.  Claims of unfair competition based only on the sale of copies, and no other act, do not contain this extra element, and are, therefore, preempted."); Mayer v. Josiah Wedgwood & Sons, Ltd., 601 F. Supp. 1523, 1535-36 (S.D.N.Y. 1985) (claims are preempted where "[t]he basic act which constitutes the infringement of plaintiff's rights, however, is the same as that of copyright."); see also Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 232 (1964) (state law misappropriation claims based on conduct protected by the Patent Act are barred, even where such conduct causes consumer confusion).

Furthermore, to the extent that the cases relied on by the Plaintiff hold that unfair competition claims based on copying creative material may succeed if a plaintiff proves consumer confusion as to the creative source of the copyrightable material, these cases are no longer good law.  See Dastar, 539 U.S. at 37 (explaining that the Lanham Act and the common law from which it originates cover confusion regarding "the producer of the tangible goods that are offered for sale and not [regarding] the author of any idea, concept, or communication embodied in those goods"); see also Twentieth Century Fox Film Corp. v. Dastar Corp., No. 98-07189, 2003 U.S. Dist. LEXIS 21194, at * 14 (C.D. Cal. Oct. 16, 2003) ("The Supreme Court's finding that Defendants' actions were not misleading under the *Lanham Act* controls the resolution of their California unfair competition claim.  As with their *Lanham Act* claim, Plaintiffs cannot prevail on their California unfair competition claim.") (emphasis in original).

---

[8]  All of the cases cited by Plaintiff involved an "extra element" beyond mere copying – a fact which sets them apart completely from the instant case.  See Lone Wolf McQuade Associates v. CBS, Inc., 961 F. Supp. 587, 599 (S.D.N.Y. 1997); CSM Investors, Inc. v. Everest Development, ltd., 840 F. Supp. 1304, 1314 (D. Minn. 1994); Nash v. CBS, Inc., 704 F. Supp. 823, 833 (N.D. Ill. 1989).

## <u>Conclusion</u>

For the foregoing reasons, Defendants respectfully request that the Court grant their motion for summary judgment.

Date:  December 13, 2007                    Submitted by:


                                           /s/ Steven J. Metalitz
                                           Steven J. Metalitz (D.C. Bar No. 944603)
                                           J. Matthew Williams (D.C. Bar No. 501860)
                                           MITCHELL SILBERBERG & KNUPP, LLP
                                           2300 M Street, N.W., Suite 800
                                           Washington, D.C. 20037
                                           (202) 973-8109 (Telephone)
                                           (202) 973-8110 (Facsimile)

                                           Marc E. Mayer (*pro hac vice*)
                                           MITCHELL SILBERBERG & KNUPP LLP
                                           11377 West Olympic Boulevard
                                           Los Angeles, California 90064-1683
                                           (310) 312-2000 (Telephone)
                                           (310) 312-3100 (Facsimile)

                                           *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS has been served, via Federal Express and via the Court's electronic filing system, to the following address on December 13, 2007:

Janice Scott-Blanton
3578 Wharf Lane
Triangle, VA 22172


 /s/ Marc E. Mayer
Marc E. Mayer (*pro hac vice*)
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
(310) 312-2000 (Telephone)
(310) 312-3100 (Facsimile)
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| **JANICE SCOTT-BLANTON,** *pro se* ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. **1.07cv00098 (RMU)** |
| ) | |
| **UNIVERSAL CITY STUDIOS** ) | |
| **PRODUCTIONS LLLP,** *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## RESPONSE OF DEFENDANTS TO PLAINTIFF'S SEPARATE STATEMENT OF GENUINE ISSUES IN OPPOSITION TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to LCvR 56.1, Defendants hereby submit the following Response to Plaintiff's Separate Statement of Genuine Issues In Opposition to the Motion for Summary Judgment:

1.      Scribner republished a version of the short story Brokeback Mountain in 2003 in the book, Close Range. Decl, of Nan Graham, Ex. 1. The book states within its bounds that it was republished in 2003.

Response:  Undisputed, but irrelevant.  The version of the short story *Brokeback Mountain* re-published in 2003 is substantively identical to the version published in 1999 (Graham Decl., ¶ 2, Ex. 1), and contains only minor edits from the version contained in the October 13, 1997, issue of *The New Yorker.*  Id.; Compare Mayer Decl., Ex. A with Graham Decl., Exs. 1, 2, & 3.  Moreover, Plaintiff's book, *My Husband Is On The Down Low And I*

1

*Know About It* (*"Down Low"*) was not published until 2005, two years after the 2003 re-publication of *Brokeback Mountain*.  Amended Complaint, ¶ 23.

2.    All versions of the short story in the record, which are all essentially identical , are changed or altered versions of the real original short story . Defendant Proulx stated in her essay that her original short story contained a "motel scene," but that defendant Lee split the motel scene, and the split scenes have been incorporated into all versions of the short story in the record.  Plaintiff 2nd Decl., Ex. B, p. 136; Plaintiff  2nd Decl., Ex. C.  According to defendant Ossana , James McMurtry wrote the song "Water Walking Jesus" for the motion picture years after defendant wrote the original version of the short story.  Decl. of Marc E. Mayer, Ex H.  All versions of the short story in the record specifically mention this song by title even though the song was written years after the original short story was written.

Response:    Disputed that "all versions of the short story in the record…are changed or altered versions of the real original short story."  There is no evidence in the record to support this assertion.   Defendants do not dispute that "all versions of the short story in the record…are all essentially identical."  For purposes of this Motion, Defendants do not dispute that the Short Story contains scenes that are similar to those contained in the Motion Picture, that the Short Story mentions the song title "Water Walking Jesus," and that a song entitled "Water Walking Jesus" was written after the Short Story was written.  However, these facts are irrelevant.  That there are similarities between the "motel scene" in the Short Story and the Motion Picture and that the song "Water Walking Jesus" was created after the Short Story was written is not evidence that the Short Story in the record is a "changed or altered version" of a "real original short story."

3.    Defendant McMurtry, like defendant Proulx, disagreed with defendant Lee's splitting of the motel scene. Plaintiff 2nd Decl., Ex. D.; Plaintiff 2nd Decl., Ex. E.

Response:  Disputed, but irrelevant.  Whether or not McMurtry or Proulx agreed with certain creative decisions made by Lee has no bearing on the fact that the Short Story, Screenplay, and Motion Picture all were written or filmed prior to the publication of Plaintiff's book.  In any event, Exhibit E does not reflect disagreement concerning "splitting of the motel scene," but only that McMurtry stated that he "questioned whether the audience seeing Alma's reaction to witnessing Ennis and Jack kissing wouldn't be too shocking."  See Scott-Blanton Decl., Exs. D, E.

4.    All stand alone versions of the short story in the record state within their bounds that Dead Line, Ltd copyrighted them in 2005.  Decl. of Marc E. Mayer, Exs. F & G.

Response:  Disputed.  The copyright notices contained in the works attached as Exs. F and G to the Declaration of Marc Mayer both reflect that *Brokeback Mountain* was "first published" in 1997.  See Mayer Decl., Ex. F, p. 3; Ex. G, p. 3.  The copyright notices contained in Exhibit F reflect that certain ***other*** material contained in the book *Brokeback Mountain: Story to Screenplay* (namely, the essays "Adapting Brokeback Mountain," "Climbing Brokeback Mountain," and "Getting Movied") was first published in 2005.  The copyright notices contained in Exhibit G reflect that the Scribner "trade paperback edition" of *Brokeback Mountain* was first published in 2005.

5.    The motion picture was created in 2005 as stated in the copyright application. Plaintiff 2nd Decl., Ex. H.

Response:  Disputed.  The copyright application for *Brokeback Mountain* attached as Exhibit H to the Scott-Blanton Declaration states that the Motion Picture was "***completed***" in 2005.

6.      The packaging for the motion picture states that the motion picture was copyrighted in 2005.

Response:  To the extent that by the term "copyrighted," Defendant is referring to the date of first publication for purposes of copyright notice under 17 U.S.C. § 401(b), this fact is undisputed for purposes of this Motion.

Date:  December 13, 2007                    Submitted by:


                                          /s/ Steven J. Metalitz
                                          Steven J. Metalitz (D.C. Bar No. 944603)
                                          J. Matthew Williams (D.C. Bar No. 501860)
                                          MITCHELL SILBERBERG & KNUPP LLP
                                          1818 N Street, N.W., 8th Floor
                                          Washington, D.C. 20036
                                          (202) 355-7902 (Telephone)
                                          (202) 355-7892 (Facsimile)

                                          Marc E. Mayer (*pro hac vice*)
                                          MITCHELL SILBERBERG & KNUPP LLP
                                          11377 West Olympic Boulevard
                                          Los Angeles, California 90064-1683
                                          (310) 312-2000 (Telephone)
                                          (310) 312-3100 (Facsimile)
                                          *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing RESPONSE OF DEFENDANTS TO PLAINTIFF'S SEPARATE STATEMENT OF GENUINE ISSUES IN OPPOSITION TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT has been served, via Federal Express and via the Court's electronic filing system, to the following address on December 13, 2007:

Janice Scott-Blanton
3578 Wharf Lane
Triangle, VA 22172

/s/ Marc E. Mayer
Marc E. Mayer (*pro hac vice*)
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
(310) 312-2000 (Telephone)
(310) 312-3100 (Facsimile)
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JANICE SCOTT-BLANTON,** *pro se* ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.                                    ) | Civil Case No. **1.07cv00098 (RMU)** |
| ) | |
| **UNIVERSAL CITY STUDIOS** ) | |
| **PRODUCTIONS LLLP,** *et al.,* ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' EVIDENTIARY OBJECTIONS TO SECOND DECLARATION OF PLAINTIFF JANICE SCOTT-BLANTON

Defendants submit the following evidentiary objections to the Second Declaration of Plaintiff Janet Scott-Blanton:[9]

1.    Paragraph 4, Exhibit D: Cinemalogue Interview with Larry McMurtry and Diana Ossana

---

[9]   In addition to the evidentiary issues identified below, Plaintiff's entire declaration is inadmissible because it does not even purport to be based on personal knowledge (instead expressly stating that it contains statements of fact that are "true and accurate representations ***to the best*** of [Plaintiff's] personal knowledge, ***understanding and belief***") (emphasis added).  See Wuliger v. Eberle, 414 F. Supp. 2d 814, 818 (N.D. Ohio 2006) (statements made "to the best of" affiant's knowledge or belief are insufficient to meet personal knowledge requirement); Lopez-Carrasquillo v. Rubianes, 230 F.3d 409, 414 (1st Cir. 2000) (affidavit filed in opposition to summary judgment was insufficient because it was made "to the best of my knowledge"); Friedel v. City of Madison, 832 F.2d 965, 969-970 (7th Cir. 1987) (affidavit of plaintiff's attorney stricken for lack of personal knowledge because it contained claims which attorney merely believed were true).

1

**Objections:** Hearsay (FRE 802); Lack of Personal knowledge (FRE 602).  Witness is not competent to testify concerning the interview because she admits that she was not present at the place at the time that it allegedly occurred.

2.      Paragraph 8, Exhibit I.

**Objections:**  Hearsay (FRE 802); Lack of personal knowledge (FRE 602).  Witness is not competent to testify concerning the accuracy of the substance of Ms. Wai's emails.

3.      Paragraph 14, Exhibit K.

**Objections:**  Hearsay (FRE 802); Lack of personal knowledge (FRE 602).  Witness is not competent to testify concerning the interview because she admits that she was not present at the place at the time that it allegedly occurred.

4.      Paragraph 16, Exhibit N.

**Objections:**  Hearsay (FRE 802); Lack of personal knowledge (FRE 602).  Witness is not competent to testify concerning the interview because she admits that she was not present at the place at the time that it allegedly occurred.

Date:  December 13, 2007                    Submitted by:


/s/ Steven J. Metalitz
Steven J. Metalitz (D.C. Bar No. 944603)
J. Matthew Williams (D.C. Bar No. 501860)
MITCHELL SILBERBERG & KNUPP LLP
1818 N Street, N.W., 8th Floor
Washington, D.C. 20036
(202) 355-7902 (Telephone)
(202) 355-7892 (Facsimile)

Marc E. Mayer (*pro hac vice*)
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
(310) 312-2000 (Telephone)
(310) 312-3100 (Facsimile)
*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing DEFENDANTS' EVIDENTIARY OBJECTIONS TO SECOND DECLARATION OF PLAINTIFF JANICE SCOTT-BLANTON has been served, via Federal Express and via the Court's electronic filing system, to the following address on December 13, 2007:

Janice Scott-Blanton
3578 Wharf Lane
Triangle, VA 22172

<u>/s/ Marc E. Mayer</u>
Marc E. Mayer (*pro hac vice*)
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
(310) 312-2000 (Telephone)
(310) 312-3100 (Facsimile)
*Attorneys for Defendants*